**William LOWARY, et al., Plaintiffs,**

v.

**LEXINGTON LOCAL BOARD OF EDUCATION, et al., Defendants.**

No. C86–1536A.

United States District Court,
N.D. Ohio, E.D.

Nov. 18, 1988.

Glenn M. Taubman, Rossie D. Alston, Jr., Nat. Right to Work Legal Defense Foundation, Inc., Springfield, Va., James Calhoun, Calhoun, Benzin, Kademenos & Heichel, Mansfield, Ohio, for plaintiffs.

Ira Mirkin, Green, Schiavoni, Murphy, Haines & Scambati, Youngstown, Ohio, for Lexington Teachers Ass'n and Ohio Educ. Ass'n.

Loren L. Braverman, Kathleen McManus, Columbus, Ohio, for Anthony Celebrezze.

Alexander M. Andrews, Ulmer, Berne, Laronge, Glickman & Curtis, Cleveland, Ohio, for all other defendants.

### ORDER

DOWD, District Judge.

### I. INTRODUCTION.

Before the Court in the above-captioned case is the defendant Association's second

motion for partial reconsideration (docket # 184), and the plaintiffs' motion for a partial reconsideration (docket # 188).

This is a § 1983 action brought by the plaintiffs challenging the fair share fee provisions of the collective bargaining agreement between the Lexington Local Board of Education, the defendant Lexington Teachers' Association and the Ohio Education Association ("OEA"). The case has a long history with this Court and has resulted in two major decisions by the Court. The first decision by the Court was issued on October 21, 1987 (docket # 129) ("*Lowary* I") 704 F.Supp. 1430 and the second was issued on March 2, 1988 (docket # 172) ("*Lowary* II"), 704 F.Supp. 1456. In the first opinion the liability of the defendants was at issue. In the second opinion, the Court addressed post-judgment motions and the question of whether the OEA's new fair share fee procedure established as a result of the Court's decision in *Lowary* I met the constitutional minimal standards. The parties are now back before this Court with the above two motions seeking reconsideration of the combined decisions of the Court.

For the reasons that appear below, the defendants' second motion for partial reconsideration is granted and the plaintiffs' motion for reconsideration is denied.

## II. DEFENDANT ASSOCIATION'S SECOND MOTION FOR PARTIAL RECONSIDERATION.

In the Court's Memorandum Opinion of October 21, 1987 ("*Lowary* I") the Court examined the defendants' fair share fee procedures for three separate academic years: 1984–1985; 1985–1986; and 1986–1987. The Court concluded that the plaintiffs' claims of alleged constitutional violations under § 1983 were time barred for the academic year 1984–1985. *Lowary* I, at p. 1443. The Court, however, found that *Chicago Teachers Union, Local No. 1 AFT, AFL–CIO v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) and *Tierney v. City of Toledo*, 824 F.2d 1497 (6th Cir.1987) had retroactive application to the 1985–1986 fair share fee plan and con-

cluded that the plan for that academic year was constitutionally deficient. *Lowary* I, at p. 1445. The Court also found that the fair share plan for the 1986–1987 year was constitutionally deficient. *Lowary* I, at p. 1447.

In the defendants' second motion for partial reconsideration, the defendant argues that the Court should not have retroactively applied *Hudson* and *Tierney* to the 1985–1986 academic year.

In *Lowary* I the Court recognized that the law in the Sixth Circuit with respect to retroactivity was unsettled and examined the Sixth Circuit's decisions in *Gurish v. McFaul*, 801 F.2d 225 (6th Cir.1986) and *Smith v. General Motors Corp.*, 747 F.2d 372 (6th Cir.1984) (*en banc*). The Court recognized that *Gurish* and *Smith* stood for the proposition that where the Supreme Court was silent on the issue of retroactivity, it would be presumed that the Supreme Court intended the rule or principle of law to have retroactive application. *Lowary* I, at p. 1443. At the same time, the Court recognized the Sixth Circuit's decision in *Carter v. City of Chattanooga*, 803 F.2d 217 (6th Cir.1986) where the Sixth Circuit applied the retroactivity factors established in *Chevron v. Hudson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The Court concluded that

[d]espite the apparent conflict in the Sixth Circuit, the Court will apply *Hudson* retroactively to the plaintiffs' claims based on the 1985–1986 school year rebate plan. First, *Smith*, the case on which *Gurish* was based, was an *en banc* decision of the Sixth Circuit, and thus entitled to greater consideration than apparently contradictory panel decision [i.e., *Carter*]. Second, the Court notes that the Sixth Circuit recently applied *Hudson* retroactively. *See Tierney v. City of Toledo*, 824 F.2d 1497 (6th Cir.1987). Thus, *Hudson* applies to the plaintiff's claims based on the 1985–1986 school year rebate procedure.

*Lowary* I, pp. 1443–1444. While the Court specifically found that *Hudson* had retroactive application, the Court also relied on *Tierney* in its review of the 1985–1986 re-

bate plan thus giving *Tierney* retroactive application also. *See, Lowary* I, at pp. 1444–1446.

The defendant Association argues that the Sixth Circuit's recent decision in *Carter v. City of Chattanooga*, 850 F.2d 1119 (6th Cir.1988) makes it clear that when determining whether a principle of law is to be applied retroactively, the factors announced in *Chevron v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) are to be used. The defendant argues that had the Court conducted the *Chevron* analysis in *Lowary* I, it would have concluded that *Hudson* and *Tierney* could not be retroactively applied to the 1985–1986 procedure.

In *Carter v. City of Chattanooga, Tenn.*, 850 F.2d 1119 (6th Cir.1988), the Sixth Circuit relied upon the three-part analysis in *Chevron* in determining whether to apply the Supreme Court's decision in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) to the facts of *Carter*.[1] The Sixth Circuit concluded that "we expressly adopt the reasoning of *Thomas v. Shipka* to the effect that the holding of *Smith v. General Motors* is no longer valid. Accordingly, we have applied the test of non-retroactivity established in *Chevron Oil.* ..." *Carter*, 850 F.2d at 1133. In *Thomas v. Shipka*, 829 F.2d 570 (6th Cir.1987), the Sixth Circuit concluded that *Smith* could no longer be the law of the circuit in the area of retroactive application in view of the Supreme Court's decision in *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987), and in *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987).

■ In view of *Carter v. City of Chattanooga, Tenn.*, 850 F.2d 1119 (6th Cir.1988), the Court finds that the proper test for determining whether a decision is to be given retroactive application is that enunciated in *Chevron*. Accordingly, the Court finds that its application of the *Smith–Gurish* rule in *Lowary* I was inappropriate

and the Court now turns to a consideration of the factors enunciated in *Chevron*.

In *Chevron*, the Supreme Court recognized three general factors to be considered when making the determination of whether a new principle of law should be applied retroactively. Generally, the three factors are: (1) whether the decision to be applied retroactively has established a new principle of law "either by overruling clear past precedent on which litigants may have relied, ..., or by deciding an issue of first impression whose resolution was not clearly foreshadowed;" (2) whether the application of the decision would further the operation of the new principle of law and its goals; and (3) the balance of the inequities imposed by the retroactive application. *Chevron*, 404 U.S. at 106–107, 92 S.Ct. at 355. The threshold question, notwithstanding the three separate factors, is whether the principle of law newly established either overrules clear past precedent on which litigants have relied or whether the issue decided is one of first impression whose resolution was not clearly overshadowed. *United States v. Johnson*, 457 U.S. 537, 550 n. 12, 102 S.Ct. 2579, 2587 n. 12, 73 L.Ed.2d 202 (1982).

■ The defendant Association argues that there were a number of new principles of law established in *Hudson* that were not clearly foreshadowed or decided prior to the date of *Hudson*. The defendant argues that the following aspects of *Hudson* were all new additions to the issue of fair share fee collections: (1) the requirement of an impartial decision maker and the requirement that the union not select the impartial fee umpire; (2) that the union be required to make a financial disclosure prior to the opportunity to object; and (3) that in *Ellis v. Brotherhood of Railway, Airline & Steamship Clerks*, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984), the Supreme Court gave approval to the interest bearing escrow accounts as acceptable al-

---

**1.** The decision in *Carter* cited at 850 F.2d 1119 was the second time that *Carter v. City of Chattanooga, Tenn.* was before the Sixth Circuit. While the Sixth Circuit applied the *Chevron* factors in the first decision, the Court did not as

clearly enunciate its justification for the application of *Chevron* as opposed the application of *Gurish* and *Smith* as it did in the later *Carter* decision.

ternatives to collection and that such an alternative was eliminated in *Hudson*. The defendants also argue that the district court's approval of the unions procedure in *Tierney* is support from the proposition that the defendant was entitled to rely on that precedent before *Hudson*.

The plaintiffs argue that the defendant was on notice that their procedures were defective in view of the Seventh Circuit's decision in *Hudson v. Chicago Teachers Union*, 743 F.2d 1187 (7th Cir.1984), *aff'd*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) because it was issued in 1984. Moreover, the plaintiffs argue that the Supreme Court in *Hudson* did not establish any new principles of law but was instead forecasted or foreshadowed by the decision of the Supreme Court in *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). The plaintiffs rely on concurring opinion of Justice Stevens for the proposition that "the OEA/LTA union can hardly claim that they could not possibly see the 'handwriting on the wall' in light of Justice Stephens' prescient language *eleven* years ago." Plaintiffs' Memorandum of Law in Opposition to Defendants' Second Motion for Partial Reconsideration, p. 3 (emphasis in original).

The Court finds that both *Hudson* and *Tierney* established new principles of law at the time the decisions were issued. The Court agrees with the defendants and finds that both *Hudson* and *Tierney* narrow the focus of that which was presented in *Abood* and set new principles for the specific operation of fair share fee collections.

The decision in *Hudson* was decided on March 4, 1986. The decision in *Tierney* was decided on July 27, 1987. The earliest action taken in the 1985–1986 school year began on or about June 27, 1985 when the Lexington Teachers Association notified the school board of the fair share fee amount. Stipulated Fact # 31. The fair share fee plan in effect for the 1985–1986 year was identical to that in the 1984–1985 year. *See* Stipulated Fact # 30 and # 5. It is clear that the defendant Association's fair share fee plan in effect for the 1985–1986 school year was implemented substan-

tially prior to the announced decision of *Hudson* in March of 1986 and *Tierney* decision announced in July of 1987. Accordingly, when the rebate plan for 1985–1986 was under consideration the Association did not have before it either *Hudson* or the Sixth Circuit decision in *Tierney*.

The defendant claims that it was entitled to rely on the district court's endorsement of the union's rebate plan in *Tierney* because the rebate plan in question here was substantially similar. The Court noted in *Lowary* I that "the OEA plan is remarkably similar to the City of Toledo procedure declared unconstitution in no uncertain terms of the Sixth Circuit in *Tierney*." *Lowary* I, at p. 1446. The Court recognizes that a district court decision cannot be said to be clear precedent but it does highlight the developing nature of fair share fee principles.

In sum, the Court finds that although there was no clear precedent established in fair share fee cases prior to *Hudson* and *Tierney*, the decisions of *Hudson* and the Sixth Circuit decision in *Tierney* clearly establish issues of first impression on the specific requirements of fair share fee collections. Moreover, the Court finds that neither *Abood* or the Seventh Circuit's decision in *Hudson*, 743 F.2d 1187, foreshadowed the holdings of *Hudson*, 475 U.S. 292, 106 S.Ct. 1066, and *Tierney*. Accordingly, the Court finds that the first factor in the *Chevron* analysis falls in favor of the defendant association and in favor of the prospective application of *Hudson* and *Tierney*.

Turning to the second consideration under *Chevron*, i.e., whether the application of the decision would further the operation of the principles announced in *Hudson* and *Tierney* and its goals, the Court finds that the application of *Hudson* and *Tierney* to the 1985–1986 rebate plan would not further the principles and goals of *Hudson* and *Tierney*.

The defendant argues that the purpose behind the new principles announced in *Hudson* would not be furthered by the retroactive application to the 1985–1986 year. The defendant argues that in each

instance, the overall purpose was in fact achieved. For example, the defendant argues that the purpose of the impartial decision maker rule was to prevent union control over the review process. The defendant argues that in fact the impartial decision maker was appointed by the American Arbitration Association and therefore not appointed by the union. Stipulated Fact # 49. Further, the defendant argues that the purpose of the financial disclosure, while admittedly inadequate by later standards, served the purpose of initiating the objection of the plaintiffs. The plaintiffs, on the other hand, simply conclude that the retroactive application of *Hudson* and *Tierney* enhances the application of the principles announced in those decisions.

The Court finds that the application of *Hudson* and *Tierney* to the 1985–1986 rebate plan would not further the principles announced in *Hudson* and *Tierney* because the developing nature of fair share fee rebate plans at the time in question. The Court finds that because of the extent of the principles and detail of those principles announced in *Hudson* and *Tierney*, the purposes behind those rules would not be served by the retroactive application to a plan that was developed prior to those decisions.

The Court now turns to an examination of the equities of retroactive application. The defendants argue that it should not be penalized for relying on federal and state decisions validating its procedure. While the Court recognizes the constitutional deficiencies of the plan in effect in 1985–1986 in light of more recent standards, the Court also recognizes that there was an attempt by the defendants to have in place a fair share fee provision that complied with the current state of the law. The fact that it was later determined to be a constitutionally deficient plan under the new cases of *Hudson* and *Tierney* does not diminish the association's attempt to comply. The Court recognizes the substantial rights of the plaintiffs in this action, however, the Court finds that the plaintiffs have simply failed to adequately argue before the Court what inequities it would suffer besides concluding "that gross injustice will occur to the plaintiffs, because the unions will then be able to keep the money which they illegally seized." Plaintiffs' Brief at p. 5.

In sum, the Court finds that *Hudson* and *Tierney* should not have retroactive application to rebate procedure in place in the above-captioned case for the academic year 1985–1986. Accordingly, the Court hereby vacates its decision in *Lowary* I to the extent that it found *Hudson* and *Tierney* applicable to the 1985–1986 fair share fee plan. Similarly, the Court vacates its decision in *Lowary* II (March 2, 1988 Order) to the extent that it ordered relief for constitutional violations under the 1985–1986 plan. The Court finds that the alleged violations brought by the plaintiffs in regards to the plan in effect for 1985–1986 are time barred.

## III. PLAINTIFFS' MOTION FOR RECONSIDERATION.

The plaintiffs seek reconsideration of the Court's portion of the March 2, 1988 order ("*Lowary* II") wherein the Court declined to award a complete restitution of all the agency fees collected as a result of the 1985–1986 and 1986–1987 academic years. The plaintiffs' motion is based upon the Sixth Circuit's decision in *Lowary v. Lexington Local Board of Education*, 854 F.2d 131 (1988). In *Lowary*, 854 F.2d 131, the Sixth Circuit Court of Appeals reviewed this Court's decision to require the defendant union to escrow all the fair share fee pending a resolution on the merits of this case. The Sixth Circuit reversed and ordered that the fair share fees collected and placed in escrow be returned. The plaintiffs argue that "the Court's order of March 2, 1988, denying plaintiffs' request for complete restitution of *all* illegally seized fees is erroneous as a matter of law under the Sixth Circuit's decision in *Lowary v. Lexington Local Board of Education....*" Plaintiffs' Motion for Partial Reconsideration, at p. 1 (emphasis in original).

The Court finds that the plaintiffs' reliance on *Lowary*, 854 F.2d 131 is misplaced. The Sixth Circuit's review was lim-

ited to whether the escrow of fair share fees collected in view of the Court's preliminary holding that it was likely that the procedures in place violated *Hudson* was permissible. The Sixth Circuit simply concluded that the escrow was not permissible. The focus in *Lowary*, 854 F.2d 131, therefore, was not on the remedy phase once a fair share fee plan has been determined to be unconstitutional. The Court remains committed to its award of relief under the March 2, 1988 order, *Lowary* II, and finds that the plaintiffs' motion for reconsideration is not well taken. Accordingly, the plaintiffs' motion is denied.

## IV. CONCLUSION.

For the reasons that appear above, the defendants' second motion for partial reconsideration is granted, and the plaintiffs' motion for reconsideration is denied.

IT IS SO ORDERED.