**William LOWARY and Sara Wyatt, Plaintiffs–Appellants,**

v.

**LEXINGTON LOCAL BOARD OF EDUCATION, Ohio Education Association, Lexington Teachers Association, et al., Defendants–Appellees.**

No. 88–4191.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 28, 1989.
Decided May 17, 1990.

**424**

James A. Calhoun, Calhoun, Benzin, Kademenos & Heichel, Mansfield, Ohio, Glenn M. Taubman, National Right to Work Legal Defense Found., Springfield, Va., for plaintiffs-appellants.

Alexander M. Andrews, Ulmer & Berne, Cleveland, Ohio, for defendants-appellees Lexington Local Bd. of Educ., Mark Plotnick, Susan Umbarger, James Bollinger, Rick Bell, and Helen Gilroy.

Bruce R. Lerner, Robert H. Chanin, Bredhoff & Kaiser, Washington, D.C., Ira J Mirkin, Green, Haines, Sgambati, Murphy & Macala, Youngstown, Ohio, for defendant-appellee Lexington Teachers Ass'n.

Jeremiah A. Collins, argued, Bredhoff & Kaiser, Washington, D.C., Ira J Mirkin, Green, Haines, Sgambati, Murphy & Macala, Youngstown, Ohio, Loren L. Braverman, Office of the Atty. Gen. of Ohio, Columbus, Ohio, for defendant-appellee Ohio Educ. Ass'n.

Before: MERRITT, Chief Judge,
RYAN, Circuit Judge, and PECK, Senior Circuit Judge.

MERRITT, Chief Judge.

Plaintiffs, dissenting nonunion teachers of a "closed-shop" bargaining unit in Ohio, attack as unconstitutional various procedures contained in the dues collection plan of the local and state teacher's unions. They appeal the adverse portions of the District Court's judgment in their action challenging the constitutionality of three fair share fee provisions in the dues collection plan made a part of a collective bargaining agreement. 704 F.Supp. 1476.

Specifically, the two nonunion teachers brought suit pursuant to 42 U.S.C. § 1983 against their employer, the Lexington Local Board of Education (School Board); their local union, the Lexington Teachers Association; and its state affiliate, the Ohio Education Association. They asserted that the so-called "fair share" fee collections or union dues charged against them violate the Supreme Court's decision in *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). They sought relief for the 1985–86 collections, which already had occurred, as well as future collections, particularly the 1986–87 and 1987–88 collections made during the pendency of this litigation.

Four issues are raised on this appeal. First, plaintiffs challenge the District Court's holding that *Hudson* cannot be applied retroactively to allow recovery for the 1985–86 fee collections. Second, plaintiff Wyatt challenges the District Court's absolute denial of all relief for the 1985–86 collections, assuming the retroactive application of *Hudson*, because of her failure to file a formal objection with the union pursuant to the terms of the unconstitutional collection fee plan. Third, plaintiffs object to the District Court's decision to uphold the union's 1987–88 fee collection plan containing a so-called "local union presumption" under which the chargeable portion of the local teacher union dues is presumed to be the same as the chargeable portion of the state teacher union dues. Fourth, plaintiffs challenge the District Court's refusal to order restitution for *all* of the fees which had been collected in 1985–86 and 1986–87 pursuant to the unconstitutional fee collection plans.

We affirm the District Court in part, and reverse the District Court in part. We hold

that *Hudson* should be applied retroactively under the three-pronged test set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). In addition, plaintiff Wyatt is entitled to relief despite her failure to file a formal objection with the union because the fee plan, including its notice provisions, is unconstitutional. We also hold that the "local union presumption" contained in the 1987–88 plan is unconstitutional. However, we affirm the District Court's order denying restitution for all fees which had been collected in 1985–86 pursuant to unconstitutional fee collection plans. Plaintiffs may recover only the nonchargeable portions of the collected fees.

## I. Facts

A collective bargaining agreement between the School Board and the local union provided that those bargaining unit members who did not join the union would be required to have a "fair share fee" deducted from their salaries to defray the costs of union representation. These fair share fee collection provisions changed each year from 1985–87, and fees were collected pursuant to each of these three plans.

### A. The 1985–86 School Year

The 1985–86 fee collection plan provided that each nonunion employee must pay an initial fee equal to 100% of the union dues paid by union members. In previous years, both plaintiffs had been informed of certain objection procedures, although no objection procedure information was contained in the plan for the 1985–86 school year. Any teacher who objected to paying the full fair share fee, by following specific objection notice procedures contained in earlier plans, could receive a rebate of any portion paid that would have been used to fund partisan political or ideological causes unrelated to the collective bargaining function of the employee organization. But under the plan, the unions unilaterally selected their own umpire to determine the ultimate amount to be rebated to objecting nonmembers.

Plaintiff Lowary objected and a small portion of his dues was escrowed. Plaintiff Wyatt did not object and none of her fair share fee was escrowed.

Subsequently, the Supreme Court in *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), set forth the "constitutional requirements for [a union's] collection of agency fees." *Id.* at 310, 106 S.Ct. at 1078. The Sixth Circuit elaborated on these requirements in *Tierney v. City of Toledo*, 824 F.2d 1497 (6th Cir.1987). Plaintiffs then brought this suit claiming that defendants' actions failed to meet the procedural requirements set forth in *Hudson* and *Tierney*.

In October 1987, the District Court initially held that the 1985–86 fee collections were unconstitutional under *Hudson* and *Tierney* but that only plaintiff Lowary was deemed entitled to relief because plaintiff Wyatt had failed to make a formal objection under the otherwise unconstitutional plan. Then a year later, on motion of the defendants, the District Court vacated its order as to plaintiff Lowary and denied relief for the 1985–86 fair share fee collections to *both* plaintiffs Lowary and Wyatt, holding that *Hudson* and *Tierney* should not be applied retroactively under the three-pronged test set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).

### B. The 1986–87 School Year

The 1986–87 fee collection plan provided that each nonmember might receive notice of the fee collections and financial disclosure prior to the collections. This notice advised each fair share feepayer of his right to an advance reduction of the nonchargeable portion of his fair share fee *only* if he agreed to waive his right to object before an impartial decisionmaker. In other words, an objector could either (1) accept a union-determined rebate and receive that rebate immediately, or (2) pay 100% of his dues into escrow and challenge the Ohio Education Association's determination before an impartial decisionmaker.

The District Court entered a preliminary injunction prohibiting further payroll de-

ductions for fair share fees until the School Board certified that the entire amount deducted would be placed in escrow. An escrow account was established and further deductions occurred. Plaintiffs appealed this preliminary injunction to this Court, which ruled that any collection of the 1986–87 fees was improper (even if held in escrow), and ordered that the escrowed fees be remitted to the plaintiffs. *Lowary v. Lexington Local Bd. of Educ.*, 854 F.2d 131 (6th Cir.1988).

On October 21, 1987, the District Court held that the 1986–87 fee collection plan was unconstitutional. Denying plaintiffs' request for the restitution of all of the fees which had been seized pursuant to the unconstitutional fee collection plan, the District Court held that plaintiffs were "entitled to a return of all monies determined to be non-chargeable by the impartial decisionmaker." The impartial decisionmaker, who was selected pursuant to the unconstitutional plan, determined that the bulk of the fees were chargeable. Plaintiffs also were awarded nominal damages and a declaratory judgment.

### C. The 1987–88 School Year

In response to this Court's decision in *Tierney*, the unions proposed a revised fee collection plan to take effect for the 1987–88 school year. The District Court found that, in all relevant respects, the procedures satisfied the constitutional requirements established in *Hudson* and *Tierney*, including a "local union presumption" used to calculate the amount of the advance reduction for objecting feepayers. The Court clearly stated that the presumption was not binding on the impartial decisionmaker in determining the ultimate amount of the fee. The "presumption" provides that:

> [t]he percentage of chargeable expenditures by local and district associations *will be presumed by the arbitrator* to be whatever percentage is found to be appropriate for chargeable OEA expenditures. Since the local and district associations spend a significantly larger percentage of their budgets on chargeable expenditures, this presumption means

that objectors will be charged less than they lawfully could be charged.

*Lowary v. Lexington Bd. of Educ.*, 704 F.Supp. 1456, 1466–67 (N.D.Ohio 1988). (emphasis added).

Plaintiffs argue that this "local union presumption" allows the unions to avoid providing audited financial disclosure statements to nonunion employees merely by producing unaudited one-page expenditure sheets. Defendants successfully argued to the District Court that this "presumption" was grounded in an efficiency rationale. This presumption allowed the state teacher's union to compute a single, statewide, advance reduction for the 1987–88 school year for all objecting feepayers, rather than making a particularized analysis for each of the numerous local and district associations that received fair share fees.

Final judgment was entered by the District Court on November 18, 1988, in accordance with all the interlocutory opinions which the court previously had issued. It is from this judgment that plaintiffs appeal.

## II. Retroactive Application of *Hudson*, and *Tierney*, in light of *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)

### A. Retroactivity of Federal Decisions

Generally, "federal cases should be decided in accordance with the law existing at the time of the decision." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 662, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987). This rule has deep roots going back in English law before Blackstone, 1 W. Blackstone, *Commentaries* * 69, for as Justice Holmes observed: "Judicial decisions have had retrospective operation for near a thousand years." *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372, 30 S.Ct. 140, 148, 54 L.Ed. 228 (1910) (Holmes, J., dissenting). *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), provides an exception to this traditional rule of retroactivity when strong reliance on the prior law was justified. *Chevron Oil* states that nonretroactivity may be appropriate in

a limited number of circumstances in which it would be inequitable to apply new law to prior conduct taken in reliance on old law. Because there is a presumption in favor of retroactive application, the party invoking *Chevron Oil* must demonstrate all three factors set forth in that case before a federal decision will be denied retroactive effect. *Lund v. Shearson/Lehman/American Express, Inc.*, 852 F.2d 182, 183–84 (6th Cir.1988).

## B. The Chevron Oil Three–Pronged Test—The First Prong

■ The first and most important part of the *Chevron Oil* test requires that "the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which the litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Chevron Oil*, 404 U.S. at 106, 92 S.Ct. at 355 (citations omitted). This "clear break" requirement is a threshold consideration for determining the nonretroactive application of federal decisions. *Id.* Although the District Court recognized that *Hudson* and *Tierney* did not overrule any prior cases, the court held that *Hudson*'s procedural due process requirements, including notice, financial disclosure, and a fair hearing, were not foreshadowed by prior decisions.

According to *Hudson*, the use of an impartial decisionmaker with respect to fair share fee objectors is required and the impartial decisionmaker may not be selected through "the Union's unrestricted choice." *Hudson*, 475 U.S. at 308, 106 S.Ct. at 1077. Prior Supreme Court cases, however, merely had suggested the "desirability of an internal union remedy," rather than requiring an impartial, independent decisionmaker. *Id.* at 307 n. 19, 106 S.Ct. at 1076 n. 19 (citing *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 240 & n. 41, 97 S.Ct. 1782, 1802 & n. 41, 52 L.Ed.2d 261 (1977); *Railway Clerks v. Allen*, 373 U.S. 113, 122, 83 S.Ct. 1158, 1164, 10 L.Ed.2d 235 (1963)). Based on these Supreme Court decisions, the defendants argue that the selection by the union of an independent arbitrator from

the National Academy of Arbitrators more than complied with prior precedent. Additionally, *Hudson*'s requirement of a completely independent decisionmaker allegedly was not "clearly foreshadowed."

*Tierney* articulated the additional requirement that a union must provide objectors with an "advance reduction" of a portion of the fair share fee. *Tierney*, 824 F.2d at 1505–06. The Supreme Court, in *Ellis v. Railway Clerks*, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984), had rejected a pure rebate system, whereby each feepayer paid an amount equal to full union dues and then received, upon objection, a rebate for any nonchargeable portions. Holding that the pure rebate system constituted a forced loan so far as the nonchargeable portion was concerned, the *Ellis* Court suggested the possible alternatives of an "advance reduction of dues and/or interest-bearing escrow accounts." *Id.* at 444, 104 S.Ct. at 1890. Thus, defendants argue that *Tierney*'s requirment of an advance reduction of dues, rather than interest-bearing escrow accounts, was not "clearly foreshadowed" in light of *Ellis*.

Finally, defendants argue that *Hudson*'s requirements of elaborate audited pre-objection financial disclosures was not clearly foreshadowed. Recognizing that *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), and *Goss v. Lopez*, 419 U.S. 565, 581, 95 S.Ct. 729, 739, 42 L.Ed.2d 725 (1975), mandate the procedural due process requirements of notice and a brief statement of the proposed action, defendants suggest that the detailed notice and financial disclosure requirements of *Hudson* were not foreshadowed by prior law. Admitting that some aspects of *Hudson* might have been foreshadowed by prior cases, defendants claim that pre-*Hudson/Tierney* fair share fee jurisprudence did not suggest that the 1985–86 fee collections at issue in this case were constitutionally unsound.

■ Although none of the specific *Hudson* questions previously had been decided authoritatively by the Supreme Court, this

fact alone is insufficient to justify nonretroactive application. In *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), the Court stated that:

[A]n entirely new and unanticipated principle of law ... has been recognized *only* when a decision explicitly overrules a past precedent of this Court, or disapproves a practice this Court arguably has sanctioned in prior cases, or overturns a longstanding and widespread practice to which this Court has not spoken, but which a *near-unanimous body of lower court authority has expressly approved.*

*Id.* at 551, 102 S.Ct. at 2588 (emphasis added) (citations omitted). In the absence of unusual circumstances, the controlling rule is that:

[W]hen a decision of this Court merely has applied settled precedents to new and different factual situations, no real question has arisen as to whether the later decision should apply retrospectively. In such cases, it has been a foregone conclusion that the rule of the later case applies in earlier cases, because the later decision has not in fact altered that rule in any material way.

*Id.* at 549, 102 S.Ct. at 2586 (citations omitted); *see also id.* at 550 & n. 12, 102 S.Ct. at 2587 & n. 12 (stating that this reasoning is applicable in both criminal and civil contexts). Applying this rule to the facts of this case, we find that although *Hudson* imposed the requirements of an impartial decisionmaker, this requirement was not as unforeseeable as defendants would have us believe.

First, although the Supreme Court has suggested the desirability of an internal union remedy, *Hudson*, 475 U.S. at 307 n. 19, 106 S.Ct. at 1076 n. 19, "[t]hose opinions did not, nor did they purport to, pass upon the statutory or constitutional adequacy of the suggested remedies." *Ellis*, 466 U.S. at 443, 104 S.Ct. at 1890. The *Abood* Court specifically disclaimed any view as to the constitutional sufficiency of intra-union procedures, and Justice Stevens' concurring opinion suggested their inadequacy. *Abood*, 431 U.S. at 244, 97 S.Ct. at 1804.

Second, a large number of lower court decisions suggested the inadequacy of various intra-union procedures. *See, e.g., Perry v. Machinists Local 2569*, 708 F.2d 1258, 1261–62 (7th Cir.1983). Most notably, the Seventh Circuit in 1984 held that the Constitution did not permit the unions to select their own arbitrators so that they might be the judge of their own cases—an obviously inequitable process. *Hudson v. Chicago Teachers Union*, 743 F.2d 1187, 1195–96 (7th Cir.1984) *aff'd*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). Confusion in the lower courts, and the divergent approaches of those courts to the issue is what led the Supreme Court in *Hudson* to grant certiorari. *Hudson*, 475 U.S. at 300, 106 S.Ct. at 1072–73 (footnote omitted). This confusion, however, does not mandate a finding that *Hudson*'s resolution of the issues was not clearly foreshadowed. In *United States v. Rodgers*, 466 U.S. 475, 484, 104 S.Ct. 1942, 1949, 80 L.Ed.2d 492 (1984), the Court plainly stated that "any argument ... against retroactive application ... [is] unavailing since the existence of conflicting cases ... made review of that issue by [the Supreme] Court and decision against the position of the [unions] reasonably foreseeable." *See also Johnson*, 457 U.S. at 559–62, 102 S.Ct. at 2592–94; *Landahl v. PPG Indus., Inc.*, 746 F.2d 1312, 1314–15 (7th Cir.1984).

*Hudson* and *Tierney* also impose an advance reduction requirement which defendants allege was not clearly foreshadowed under existing law. Again, defendants incorrectly assume that if the Supreme Court has not spoken directly to the issue then any subsequent definitive statement is not clearly foreshadowed. Prior case law should have alerted defendants to the possibility of this advance reduction requirement. Specifically, the Seventh Circuit's 1984 *Hudson* decision suggested that "advance reductions" might be required when it held that mere "rebates" were insufficient to protect the nonmembers' paramount constitutional rights. *Hudson*, 743 F.2d at 1196.

Finally, *Hudson*'s notice and financial disclosure requirements certainly were

foreseeable, flowing directly and logically from the holdings of *Abood* and *Allen.* The *Hudson* Court stated that:

"Since the unions possess the facts and records from which the proportion of political to total union expenditures can reasonably be calculated, *basic considerations of fairness* compel that they, not the individual employees, bear the burden of proving such proportion." *Abood,* 431 U.S., at 239–40, n. 40 [97 S.Ct. at 1801–02, n. 40], quoting *Railway Clerks v. Allen,* 373 U.S. 113, 122 [83 S.Ct. 1158, 1163, 10 L.Ed.2d 235] (1963). *Basic considerations of fairness,* as well as concern for the First Amendment rights at stake, also dictate that the potential objectors be given sufficient information to gauge the propriety of the union's fee. Leaving the nonunion employees in the dark ... does not adequately protect the careful distinctions drawn in *Abood.*

*Hudson,* 475 U.S. at 306, 106 S.Ct. at 1075–76 (footnotes omitted) (emphasis added). The *Hudson* Court also supported its holdings by citing to several articles and treatises which discuss the need for due process protections, including notice and financial disclosure, in the First Amendment context. *See Hudson,* 475 U.S. at 303 n. 12, 106 S.Ct. at 1074 n. 12. Even in the absence of First Amendment interests, "minimum procedural safeguards" under the due process clause include "timely and adequate notice detailing the reasons for a proposed [deprivation of property]." *Goldberg v. Kelly,* 397 U.S. 254, 267–68, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970). Similar procedural safeguards have been required under the statutory duty of fair representation owed by an exclusive bargaining representative to all employees that it represents. *See, e.g., Steele v. Louisville & N.R.R. Co.,* 323 U.S. 192, 204, 65 S.Ct. 226, 232–33, 89 L.Ed. 173 (1944).

While *Hudson* did not overrule any prior cases, its procedural requirements were clearly foreshadowed by prior agency shop decisions as well as First Amendment, due process, and fair representation case law. First, *Hudson*'s requirement of an impartial decisionmaker to process fair share fee objections is not a "clear break" from prior precedent. Despite the Supreme Court's reference to intra-union procedures, this process was not mandated and explicitly was rejected by lower court decisions. Additionally the historical development of due process requirements implicitly would suggest that an impartial decisionmaker was required. A similar conclusion can be reached as to the notice and financial disclosure requirements of *Hudson.* A potential objector certainly must be given notice of his right to object *before* he decides whether or not to object. *Tierney*'s "advance reduction" requirement also was not a "clear break" from prior precedent. While *Ellis* suggested that interest-bearing escrow accounts *might* be a viable alternative, lower court decisions clearly held to the contrary.

We conclude, therefore, that *Hudson* and *Tierney* should be applied retroactively to the fair share fee collections made pursuant to the 1985–86 agency fee collection plan contained in the collective bargaining agreement. The general rule provides for the retroactive application of federal decisions unless a party can establish all three elements set forth in *Chevron Oil.* Defendants have failed to establish that *Hudson* and *Tierney* either "overrul[e] clear past precedent ... or [decide] an issue of first impression whose resolution was not clearly foreshadowed." *Chevron Oil,* 404 U.S. at 106, 92 S.Ct. at 355 (citations omitted). Thus, defendants have failed to meet the threshold requirement of *Chevron Oil,* and *Hudson* and *Tierney* must be applied retroactively. It is unnecessary for us to assess whether defendants could establish the remaining two prongs of *Chevron Oil.*[1]

### III. Denial of Relief to Plaintiff Wyatt for Her Failure to Object to the Terms of the Unconstitutional Plan

 Holding that *Hudson* and *Tierney* apply retroactively in this case, we must

---

1. The second *Chevron Oil* factor is whether retroactive application will advance the operation of the rule at issue in the case. *Chevron Oil,* 404 U.S. at 106–07, 92 S.Ct. at 355. The third *Chev-* ron *Oil* factor is whether retroactive application works a substantial inequity on the party opposing it. *Id.* at 107, 92 S.Ct. at 355.

address to what relief, if any, plaintiff Wyatt is entitled. Plaintiff Wyatt did not raise an objection with the union as to the fair share fee. Plaintiff Lowary did. Thus, the only question is what should be the effect of a non-member's failure to object to a fair share fee provision contained in an otherwise unconstitutional fee collection plan. The District Court, in denying plaintiff Wyatt any relief because she failed to object to the fair share fee deduction, relied on the general rule that a "dissenting member bears the duty of objecting to the fair share fee before relief is granted." Memorandum Opinion at 36 (citing *Hudson*, 475 U.S. at 306 n. 16, 106 S.Ct. at 1075–76 n. 16; *Abood*, 431 U.S. at 237–40 & n. 40, 97 S.Ct. at 1800–02 & n. 40). Normally, assuming valid objection procedures, dissent will not be presumed—it must be affirmatively asserted to the union. *International Ass'n of Machinists v. Street*, 367 U.S. 740, 774, 81 S.Ct. 1784, 1803, 6 L.Ed.2d 1141 (1961).

■ This principle is inapplicable in this case, however, because the notice procedures and the fee information given under the plan were inadequate. As the Supreme Court observed:

> Basic considerations of fairness, as well as concern for the First Amendment rights at stake, also dictate that the *potential objectors* be given sufficient information to gauge the propriety of the union's fee. Leaving the nonunion employees in the dark about the source of the figure for the agency fee—*and requiring them to object* in order to receive information—does not adequately protect the careful distinctions drawn in *Abood*.

*Hudson*, 475 U.S. at 306, 106 S.Ct. at 1075–76 (footnote omitted) (emphasis added).

The District Court's reasoning on the issue of waiver is inconsistent with its analysis which found the union rebate plan to be unconstitutional. In effect, the District Court is penalizing plaintiff Wyatt for not following objection procedures in a union rebate plan which the court ruled to be *unconstitutional* precisely because it failed to provide adequate notice, financial disclosure, and an opportunity for review by an impartial decisionmaker.

The Seventh Circuit in *Hudson v. Chicago Teachers Union*, 743 F.2d 1187 (7th Cir.1984), *aff'd*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), addressed this exact issue. In rejecting the union's argument that nonmembers who failed to object had no right to challenge the constitutionality of the collection procedures, the Court stated that "[n]one of the plaintiffs followed the prescribed procedure through to the end (some did not invoke it at all), but that is unimportant if the procedure violates their constitutional rights." *Id.* at 1194. Noting that the rebate plan procedures were controlled entirely by the union, the court concluded that "[i]t [was] not surprising therefore that some of the Plaintiffs thought it futile even to ask the union to reduce the fee." *Id.* at 1195.

Our holding against a finding of waiver is perfectly consistent with longstanding Supreme Court precedent on the issue of waiver of constitutional rights. In *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), the Supreme Court noted that " 'courts indulge every reasonable presumption against waiver' " of fundamental constitutional rights and that they " 'do not presume acquiescence in the loss of fundamental rights' " (citations omitted). Rather, "[a] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Id.* After reviewing the facts of this case, we hold that plaintiff Wyatt did not intentionally abandon a known right. Thus, plaintiff Wyatt is not precluded from seeking relief.

### IV. The Local Union Presumption

■ After striking down two separate union collection plans, the District Court ordered the unions to submit a third proposal. This proposed plan subsequently was approved by the District Court. Plaintiffs challenge one aspect of the plan—the "local union presumption" provision. This provision states that:

> [t]he percentage of chargeable expenditures by local and district associations

*will be presumed by the arbitrator* to be whatever percentage is found to be appropriate for chargeable OEA expenditures. Since the local and district associations spend a significantly larger percentage of their budgets on chargeable expenditures, this presumption means that objectors will be charged less than they lawfully could be charged.

*Lowary,* 704 F.Supp at 1466–67. (emphasis added).

The District Court reluctantly upheld the constitutionality of this local union presumption. Plaintiffs allege that this local union presumption permits the unions to avoid providing audited and detailed financial statements to nonmembers concerning the local and district union affiliates in violation of *Hudson.* We agree.

The most frequently cited rationale in favor of upholding the local union presumption stems from language in *Abood* in which the Supreme Court noted that "[a]bsolute precision in the calculation of [the fair share fee] is not ... to be expected or required." *Abood,* 431 U.S. at 239 n. 40, 97 S.Ct. at 1802 n. 40. Defendants argue that because the state union spends a greater percentage on nonchargeable expenditures than do the local associations, any error in the precision of the presumption actually operates in favor of the non-member payors. As the District Court noted, however, the defendants failed to provide any empirical evidence which would support the underlying premise of the local union presumption—that the state union spends a greater percentage on nonchargeable expenditures than the local unions.

We agree with the reasoning of the court in *Lehnert v. Ferris Faculty Association —MEA—NEA,* 707 F.Supp. 1473 (W.D. Mich.1988), *aff'd,* 881 F.2d 1388 (6th Cir. 1989), that such a local union presumption is unconstitutional under *Hudson* and *Tierney.* Specifically, the court rejected the argument that the local union presumption is constitutional merely because it is rebuttable upon an objection to the impartial decisionmaker. Holding the presumption to be unconstitutional, the court noted that "the use of the local presumption increases

the risk that the reduced fee collection from the objector would be in excess of what is appropriate." *Id.* at 1479–80. The presumption "impermissibly shifts the burden of persuasion in the arbitration. 'The non-member's burden is simply to make his objection known.' *Hudson,* 475 U.S. at 306 n. 16 [106 S.Ct. at 1075 n. 16]...." *Lehnert,* 707 F.Supp. at 1480. The Sixth Circuit has stated that "the burden of showing entitlement to those funds remains with the union, even during arbitration." *Tierney,* 824 F.2d at 1505.

Contrary district court precedent exists, but no courts of appeals opinions challenge this conclusion. *See Hohe v. Casey,* 695 F.Supp. 814, 819 (M.D.Pa.1988) (holding the presumption to be "reasonable and constitutionally acceptable"), *aff'd,* 868 F.2d 69 (3d Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989); *Gillespie v. Willard City Bd. of Educ.,* 700 F.Supp. 898, 903 (N.D.Ohio 1987) (holding the presumption to be constitutional); *Andrews v. Education Ass'n,* 653 F.Supp. 1373, 1378 (D.Conn.), *aff'd as amended,* 829 F.2d 335 (2d Cir.1987) (holding the presumption to be constitutional, even though in rare cases the presumption may be incorrect).

The Second Circuit has addressed the related issue of the adequacy of an independent audit. In *Andrews v. Education Association,* 829 F.2d 335 (2d Cir.1987), the court criticized the district court for employing a "balancing test in which the cost to the union and the practicality of the procedures were to be weighed against the dissenters' First Amendment interests." *Id.* at 339. Specifically, the court noted that:

[T]he procedures mandated by *Hudson* are to be accorded all nonmembers of agency shops regardless of whether the union believes them to be excessively costly. Excessive cost cannot form the basis for allowing the union or the government to avoid *Hudson*'s requirement that the procedures used by the union to allocate bargaining and administrative costs be carefully tailored to mini-

mize the intrusion on the nonmembers' rights.

*Id.*

■ Requiring nonmembers to contribute to the cost of collective bargaining involves a substantial interference with their First Amendment right of freedom of association.[2] Although it may be somewhat burdensome on the unions, full disclosure of financial information is a minimal requirement in exchange for this interference. *Hudson* and a due regard for First Amendment values lead to this conclusion. The union must provide detailed information so that the dissenting teachers can understand why they are being charged. Only then can they make an informed decision.

## V. Plaintiffs' Rights to Reimbursement for the Money Illegally Collected Pursuant to the 1985–86 Fair Share Fee Plans

Plaintiffs initially sought reconsideration of the District Court's determination that they were not entitled to an award of restitution of all the fair share fees collected pursuant to the 1985–86 and 1986–87 agency fee collection plans. Ordering a return of those monies determined to be nonchargeable by an independent decisionmaker for the years in question, the District Court was persuaded by the defendants' argument that, by ordering total restitution, plaintiffs would enjoy a "free ride" for the two years in question by not having to pay even for chargeable expenses.

Plaintiffs challenge the District Court's decision in two ways. First, the District Court allegedly erred in denying plaintiffs' request for complete restitution of all fees. Second, plaintiffs object to the use of a decisionmaker, appointed under the provisions of the unconstitutional fee collection plans, to determine the amount of restitution to be awarded to plaintiffs.

### A. Denial of Complete Restitution

■ Plaintiffs rely heavily on this Court's decision in *Lowary*, 854 F.2d 131, in arguing that the District Court's denial of complete restitution to plaintiffs is erroneous as a matter of law and equity. *Lowary* resulted from an appeal of a preliminary injunction ruling by this same District Court ordering that plaintiffs' fees be held in escrow, despite a finding of "strong probability" of success on the merits that the collections were unconstitutional. In reversing the District Court's escrow order, this Court held that a showing of probable success, short of proving an actual *Hudson* violation, entitled plaintiffs to prompt restitution of all the money that had been improperly seized. *Id.* at 134.

Plaintiffs argue that because they have proven an actual violation of *Hudson*, they should be entitled to the same restitutionary relief. The District Court, however, refused to read *Lowary* expansively. Rather, the District Court balanced the interests of plaintiffs and the unions and concluded that it would be inequitable to require the unions to return all of the fair share fees collected from plaintiffs. Although some undetermined part of these fees was unconstitutionally seized, plaintiffs would be "free riders" to the extent that plaintiffs were allowed to recover their validly chargeable expenses. The District Court distinguished *Lowary*, noting that the Sixth Circuit's review was limited to whether the escrow of fair share fees, collected after the District Court's preliminary holding that it was likely that the collection procedures violated *Hudson*, was permissible. The Sixth Circuit simply concluded that the escrow was not permissible. By contrast, the District Court characterized this case as addressing the question of the appropriate remedy once a fair share fee plan has been held unconstitutional.

We find several flaws in plaintiffs' argument for restitution. Our primary concern is that awarding total restitution to plain-

---

2. In *Ellis v. Railway Clerks,* 466 U.S. 435, 455, 104 S.Ct. 1883, 1896, 80 L.Ed.2d 428 (1984), the Supreme Court expressed this thought as follows: "But by allowing the union shop at all, we have already countenanced a significant impingement on First Amendment rights. The dissenting employee is forced to support financially an organization with whose principles and demands he may disagree."

tiffs will undermine the policy concerns of *Abood*. Admittedly, one objective of *Abood* is to protect nonunion employees from "compulsory subsidization of ideological activity" to which the employee objects. *Abood*, 431 U.S. at 237, 97 S.Ct. at 1800. Another objective of *Abood*, however, is "to require every employee to contribute to the cost of collective-bargaining activities." *Id.* Additionally, *Hudson* leaves undisturbed the traditional rule that the proper remedy for an unconstitutional fee collection is not a refund of the total fee, but "the refund ... of a portion of the exacted funds in the same proportion that union [nonchargeable] expenditures bear to total union expenditures...." *Allen*, 373 U.S. at 122, 83 S.Ct. at 1164. Actually, the *Hudson* Court refused to rule that a complete escrow was required after an objection precisely because "[s]uch a remedy has the serious defect of depriving the Union of access to some ... funds that it is unquestionably entitled to retain." *Hudson*, 475 U.S. at 310, 106 S.Ct. at 1077.

Plaintiffs also misinterpret our decision in *Lowary*. While this Court did require a cessation of collection and release of escrowed funds, this determination preceded the establishment of a proper mechanism for determining the amount of the fees which could be extracted. *Id.* at 133–35. Thus, plaintiffs were not guaranteed a free ride after appropriate procedures for determining the proper fee amount were established. This question was expressly reserved by *Tierney*, 824 F.2d at 1507 n. 4, and the *Lowary* Court did not purport to decide this issue.

By allowing unions to retain the chargeable portions of unconstitutionally collected fair share fees we do not believe we are creating a disincentive for unions to comply with *Hudson* and *Tierney*. This argument in favor of full recovery was rejected in both *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), and *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). Specifically, the Supreme

Court held that "[t]o the extent ... Congress intended [that] the awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages." *Carey*, 435 U.S. at 256–57, 98 S.Ct. at 1048–49 (citation omitted); *see also Stachura*, 477 U.S. at 310, 106 S.Ct. at 2544.

Balancing the interests of plaintiffs with the interests of defendants, we conclude that plaintiffs are entitled to recover only the nonchargeable portion of the unconstitutionally collected fees. If lawful collection procedures had been used, plaintiffs would have had to pay a fair share fee based on the union's chargeable expenditures. To allow plaintiffs to recover for both chargeable and nonchargeable expenditures would constitute a windfall to plaintiffs.

## B. *Referral of Refund Decision*

Plaintiffs object to the use of an impartial decisionmaker, appointed pursuant to the unconstitutional fee collection plan, to determine the nonchargeable portions of the improperly collected fees. Implicit in plaintiffs' argument is that they would require the District Court to examine financial documents, and conduct a trial in order to make this determination. While the District Court might have pursued this course, it was not required to do so. Rather, the Supreme Court has suggested that courts should not involve themselves in the factual inquiries involved in making a chargeability determination. *See Allen*, 373 U.S. at 123–24, 83 S.Ct. at 1164–65; *Abood*, 431 U.S. at 240, 97 S.Ct. at 1802; *see also Tierney*, 824 F.2d at 1504–05.

Clearly, any determination by an independent arbitrator "would not receive preclusion effect in a subsequent § 1983 action." *Hudson*, 475 U.S. at 308 n. 21, 106 S.Ct. at 1077 n. 21 (citing *McDonald v. West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984)).[3] In this case, however, plaintiffs do not claim that the decisionmaker's determinations were improper.

---

**3.** The independent arbitrator's determination, however, likely would be entitled to great weight.

**434**

Rather, plaintiffs only object to the use of the procedure.

 We also reject plaintiffs' argument that the use of this "decisionmaker" is an exhaustion of remedies procedure contrary to the teachings of *Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), and other cases which suggest that plaintiffs may bypass all union procedures in a § 1983 challenge. Plaintiffs are not being required to operate under the unconstitutional plan. Rather, the District Court has lifted this procedure from the plan and instituted it as the procedure by which the nonchargeable portions of the improperly collected fees should be determined.

Accordingly, we affirm the District Court in part and reverse the District Court in part. We remand with instructions that (1) *Hudson* should be applied retroactively under the three-pronged test set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); (2) plaintiff Wyatt is entitled to relief despite her failure to file a formal objection with the union as required by the unconstitutional agency fee plan; (3) the "local union presumption" is unconstitutional; but (4) plaintiffs Wyatt and Lowary are entitled to recover only the nonchargeable portions of the collected fees, not the total amount of fees collected.