924 F.2d 1057
 135 L.R.R.M. (BNA) 3000
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Barbara CRAMER; James J. Achterhof; James P. Bebermeyer;
Gary W. Bleyer; Lensowrth Cottrell, Jr.; James E. Crowley;
Alan P. Damiano; Laura Daniel; Marlene A. Epley; Marta
S. Goff; Lloyd R. Hagan; Vicki Peters; Deborah L. Roeske;
Al Rollins; James E. Schmid; Larry Sutter, Plaintiffs-Appellants
v.
George G. MATISH, Director, et al. (Class Action);
International Union, UAW; UAW, Local 600,
Defendants-Appellees.
 Nos. 89-1885, 89-2077.
 United States Court of Appeals, Sixth Circuit.
 Nov. 2, 1990.
 
 On Appeal from the United States District Court for the Western District of Michigan, 88-00306, Benjamin Gibson, J.
 W.D.Mich.
 REVERSED IN PART, AFFIRMED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.
 Before BOYCE F. MARTIN, Jr. and WELLFORD, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs, a class of Michigan state employees within the Michigan Human and Administrative Support bargaining units who have not signed an authorization for deduction of union representative service fees, appeal the district court's dissolution of a preliminary injunction preventing the automatic deduction of union agency shop fees from non-union employees' wages, the district court's denial of their claims for restitution, and the district court's denial of their request for class certification.
 
 
 2
 Plaintiffs brought this action seeking to enjoin the automatic deduction of union representation service fees from their wages under the 1988-90 collective bargaining agreement between the State of Michigan and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and its Local 6000-UAW. This is the second such action involving these groups. In the first, we held that the union's automatic deduction program failed to meet the requirements announced in Chicago Teachers Union v. Hudson, 475 U.S. 292 (1986). See Damiano v. Matish, 830 F.2d 1363 (6th Cir.1987). After that decision, the union and the state revised their collective bargaining agreement to comply with Hudson.
 
 
 3
 Under the 1988-90 collective bargaining agreement at issue in this case, a service fee was automatically deducted from plaintiffs', and other proposed class members', wages from July 1, 1988 through June 30, 1989 in the amount of 87.3% of the full union dues for union members. Plaintiffs sought to enjoin the union from collecting any fair share deductions from non-union members, claiming that the union's new Agency Fee Payer Objection Policy, which allows for the automatic deduction of non-members' proportion of chargeable representation service fees, again failed to meet the constitutional requirements set forth in Chicago Teachers Union v. Hudson, 475 U.S. 292 (1986), Tierney v. Toledo, 824 F.2d 1497, 1502 (6th Cir.1987), and Damiano v. Matish, 830 F.2d 1363 (6th Cir.1987). Consequently, the plaintiffs argued that non-members were not obligated to pay any service fees.
 
 
 4
 The district court granted a temporary restraining order on October 7, 1988, and, after hearing oral arguments, granted a preliminary injunction on October 28, 1988. In an Opinion and Order dated November 15, 1988, the district court found that the union's new policy was sufficient under Hudson in all respects except that it did not ensure that the presumption that the local union spent more of its time in chargeable collective bargaining activities than the international union, whose percentage of chargeable activity was used to set the 87.3% fair share deduction, was reliable as applied to Local 6000. The district court concluded that the international union was responsible for having a procedure that would provide a potential objector with information regarding the expenditures of his local union, or, if the fair share deduction was based on the local presumption, that the local presumption had a basis in fact. Thus, the district court required the international union to present evidence that the local presumption had a basis in fact for the present year and to provide a method whereby potential objectors would have assurance in ensuing years that the local presumption would have continued reliability. The district court continued the preliminary injunction.
 
 
 5
 The international union subsequently provided evidence to the district court that the local presumption had a basis in fact. In addition, the international union proposed to send an annual disclosure of Local 6000's expenditures along with the Agency Fee Objection Policy to provide potential objectors with the necessary information.
 
 
 6
 Since the union complied with the district court's mandate by providing a method by which potential objectors could evaluate the local presumption's reliability in ensuing years, the district court held that the union's plan met the constitutional requirements set forth in Hudson. Consequently on July 5, 1989, the district court granted defendants' motion for summary judgment, and denied plaintiffs' motion for summary judgment, reserving for further consideration plaintiffs' claims for restitution and their motion for class certification, and ordering that the preliminary injunction would expire on August 14, 1989.
 
 
 7
 In considering the plaintiffs' claims for restitution of the past service fees and plaintiffs' motion for class certification, the district court reasoned that a union is entitled to charge non-members their pro rata share of the expenses incurred in negotiating and administering a collective bargaining agreement. Chicago Teachers Union v. Hudson, 475 U.S. 292 (1986); Abood v. Detroit Board of Education, 431 U.S. 209 (1977). The district court stated that in order to remedy a deficiency in the union's policy, plaintiffs would be entitled to restitution of paid fees which were in fact unwarranted. That is, plaintiffs would be entitled to recover only the amounts paid in excess of chargeable amounts.
 
 
 8
 Since the UAW originally deducted only 87.3% of the full UAW fees and since the UAW provided evidence to the district court that the percentage deducted was appropriate, the district court found that, having paid only their appropriate pro rata share, the plaintiffs were not damaged and were not entitled to any restitution award. The district court noted that under these circumstances, any award would be a windfall to the non-members who have been recipients of benefits provided by chargeable services. Further, the district court held that no persuasive evidence demonstrated how the plaintiffs were injured by paying only their pro rata share of chargeable expenditures. In this case, there was no harm to be compensated.
 
 
 9
 Based on its conclusions that no additional restitution was appropriate, the district court held that plaintiffs' motion to certify a class was rendered moot. Plaintiffs now appeal those rulings.
 
 
 10
 The plaintiffs contend that the district court erred in holding that an independent audit of the union's basic financial statement, but not its calculations and allocation of expenditures as chargeable or nonchargeable, was sufficient under Hudson, Tierney, Damiano, and Gwirtz v. Ohio Educ. Ass'n, 887 F.2d 678 (6th Cir.1989).
 
 In Gwirtz, we held that:
 
 11
 a union must adequately explain the basis for a fair share fee and that "adequate financial disclosure would include the major categories of expenses and verification by an independent auditor.
 
 
 12
 Gwirtz, 887 F.2d at 681. As to verification, we specifically held that an auditor is not to make legal determinations such as whether a charge falls into the category of chargeable or nonchargeable. Rather, we held that an auditor's role is to verify the expenditures made by the union so as to ensure that the expenditures that the union claims it made for particular expenses were actually made for those expenses. 887 F.2d at 682 n. 3. We rejected the claim that Hudson requires a union to give the most detailed financial information, holding that Hudson mandates only the disclosure of "adequate" or sufficient information so that nonmembers, such as the plaintiffs, may "gauge the propriety of the union's fee." Id. at 682 (citing Hudson, 475 U.S. at 306).
 
 
 13
 Under the standards for gauging the adequacy of an audit recognized in Gwirtz, we reject the plaintiffs' contentions that auditors, by reason of an ability to assess chargeability of expenses, may do so. That is a legal determination. We also reject plaintiffs' contention that because Gwirtz dealt with an audited basic financial statement plus a supplemental audited statement, that more than a basic financial statement is required under Hudson. Gwirtz makes it clear that all that is required under Hudson is a disclosure revealing the major categories of expenses and an auditor's verification that the expenditures claimed by the union were actually made for those expenses. See Lehnert v. Ferris Faculty Ass'n-MSA-NSA, 893 F.2d 111, 112 (6th Cir.1989) (reaffirming Gwirtz). Having said that, we must remand because it is unclear that the district court took the Gwirtz requirements into account when it rendered its decision on this issue.
 
 
 14
 The plaintiffs next contend that the union's use of a "local presumption" instead of providing audited statements of the local's allocated chargeable and nonchargeable expenses does not comply with Hudson. The district court initially rejected the union's reliance on the presumption that local union's engage in more chargeable collective bargaining expenditures than the international union. The district court then allowed the union to develop a plan which will annually provide nonmembers with information ensuring the reliability of the local presumption. Then, because of supplemental information, but not an audit, regarding local expenditures, the district court determined that Hudson was satisfied. That supplemental information was only to the establishment that local unions spend more of their time on chargeable activities than international unions--that the local presumption has an "established basis in fact."
 
 
 15
 The plaintiffs argue that this local presumption violates Tierney's construction of Hudson where the court held that the "[Hudson] disclosure must include an audited, detailed accounting of local union payments to affiliated state and national labor organizations that will be used for agreement and non-agreement related purposes." Tierney, 824 F.2d at 1503 (citing Hudson, 106 S.Ct. at 1076 n. 18.). They argue that using a local presumption does not provide potential objectors with the information to which they are entitled under Hudson. We agree.
 
 
 16
 In Lowary v. Lexington Local Bd. of Educ., 903 F.2d 422 (6th Cir.1990) (Lowary II), the Court held that the local presumption employed by the union was unconstitutional. The Court recognized the argument, also tendered by the union in this case, that "because the [international] union spends a greater percentage on nonchargeable expenditures than do the local [unions], any error in the precision of the presumption actually operates in favor of the nonmember payors." Lowary, 903 F.2d at 431.
 
 
 17
 In Lowary, the union failed to provide any empirical evidence that supported the premise that the state or international union spends a greater percentage on nonchargeable expenditures than the local unions. Id. Here, empirical information was provided by the union to support the local presumption. Nevertheless, we hold that as a matter of law, local presumptions circumvent Hudson's disclosure requirements and "increase[ ]the risk that the reduced fee collection from the objector would be in excess of what is appropriate. The presumption impermissibly shifts the burden of persuasion in arbitration. The nonmember's burden is simply to make his objection known." Id. at 431 (Citations and quotations omitted). Thus, we reverse the district court's determination that the union's use of a local presumption, even when augmented by some empirical evidence, met Hudson's disclosure requirements. We note that the union's point that the result of required independent audits at local unions will result in higher chargeable costs to nonmembers is no doubt true, but that is a decision for nonmembers to make. The use of a presumption does not meet our holding in Tierney that a "[Hudson] disclosure must include an audited detailed accounting of local union payments to affiliated state and national labor organizations that will be used for agreement and nonagreement related purposes." 824 F.2d at 1503. As Lowery recognized, without an independent audit of the local union, unions may "avoid providing audited and detailed financial statements to nonmembers concerning the local and district union affiliates in violation of Hudson." 903 F.2d at 431. While providing that information may be burdensome, "[e]xcessive cost cannot form the basis for allowing the union or the government to avoid Hudson's requirement that the procedures used by the union to allocate bargaining and administrative costs be carefully tailored to minimize the intrusion on the nonmembers' rights." Id. at 431-32.
 
 
 18
 The plaintiffs contend that the statement in the union's policy that arbitration shall be final and binding on objectors is unenforceable and should be removed from the policy. They state that since the district court noted that this limitation of objectors rights to bring Sec. 1983 actions is prohibited, it was wrong to allow this statement to remain in the policy.
 
 
 19
 The plaintiffs assert that while the language is unenforceable, it will mislead average objectors to conclude that they may not go to court to assert denials of their first amendment rights after arbitration. They also assert that the clause indemnifying the state for constitutional violations is void because it is against public policy for the state to shirk its responsibilities. Under Hudson, the public employer, not the union, has the primary duty to ensure that the plan is constitutionally valid. Hudson v. Chicago Teachers Union, 743 F.2d 1187, 1192 (7th Cir.1984), aff'd, 475 U.S. 292 (1986); Lowary v. Lexington Local Bd. of Educ., 704 F.Supp. 1430, 1449 (N.D.Ohio 1987), reversed on other grounds, 854 F.2d 131 (6th Cir.1988). Indemnification clauses in collective bargaining agreements which purport to relieve public employers from liability for violations of federal constitutional and civil rights are void as against public policy. Stamford Bd. of Educ. v. Stamford Educ. Ass'n., 697 F.2d 70, 73-75 (2d Cir.1982). Without such a role, public employees would have no incentive to fulfill their constitutional duties. They assert that the district court's reluctance to modify a substantive term of the collective bargaining contract is unsound. It is not a modification, rather, it is a voiding of the provision.
 
 
 20
 We agree and upon remand, the district court is instructed to strike these misleading and void provisions from the policy.
 
 
 21
 Plaintiffs further assert that they are entitled to a complete refund of their total fees deducted from their wages when the Hudson procedural safeguards were not in effect. Lowary v. Lexington Local Bd. of Eudc., 854 F.2d 131, 134-35 (6th Cir.1988) (Lowary I). The district court held that they were entitled only to a return of the amount paid in excess of the nonchargeable amounts.
 
 
 22
 In Lowary (II), this Circuit dismissed the plaintiffs' reading of Lowary (I), and held, consistent with the district court's reasoning here, that nonmembers are only entitled to reimbursement of the nonchargeable portion of unconstitutionally collected fees. 903 F.2d at 432-33. Thus, we affirm the district court's decision on this issue.
 
 
 23
 We note that upon remand, the district court must consider the refund properly awarded to the nonmembers under the Damiano decision as well as under this decision. The groups may overlap or be quite distinct and the percentages of fair share deductions may be quite different under each contract.
 
 
 24
 We also note that because we have reversed the district court on the local presumption issue and there is a potential for reversal under Gwirtz, on remand, the district court should reissue an injunction against the collection of nonmembers' fair share deduction and the district court should reconsider its class action certification decision.
 
 
 25
 Thus, we reverse in part, affirm in part, and remand for further proceedings in light of our opinion.
 
 
 26
 WELLFORD, Circuit Judge, concurring.
 
 
 27
 To the extent this decision is deemed consistent with Tierney v. City of Toledo, 824 F.2d 1497 (6th Cir.1987) ("Tierney II"), I am in full accord. Another panel of this court very recently in "Tierney III", No. 88-4047, filed October __, 1990, made the following observations concerning Tierney II and our prior decision in this case:
 
 
 28
 In Tierney II, we concluded, among other things, that the 1983 plan proffered by TPPA "contain[ed] no provision complying with Hudson's requirements that detailed financial information concerning all major categories of union expenses, including those for payments made to affiliated unions, be audited by a certified public accountant independent of the union and provided to all non-members before any fees may be collected from them." 824 F.2d at 1506. We also more fully discussed the necessary financial disclosure:
 
 
 29
 Hudson's second requirement is that the union procedure must "provide[ ] non-members with [ ]adequate information about the basis for the proportionate share." Id. In this regard the burden is upon the union to prove the proper proportion of union political expenses to total union expenditures. Id. To fulfill this burden, Hudson admonishes the union to give "potential objectors ... sufficient information to gauge the propriety of the union's fee," id. at 1076 (emphasis supplied), before it collects any fees from non-members.... The union's proportionate share figures for its "major categories of expenses, as well as verification by an independent auditor," must be disclosed to all non-members. Id. at 1076 n. 18. Such disclosure must include an audited, detailed accounting of local union payments to affiliated state and national labor organizations that will be used for agreement and non-agreement related purposes.
 
 
 30
 824 F.2d at 1503; accord Damiano v. Matish, 830 F.2d 1363, 1370 (6th Cir.1987). Further, the union must inform the non-members as to the amount of the service fee, as well as the method by which that fee was calculated. Damiano, 830 F.2d at 1370. "The union must therefore provide each non-union employee with adequate information in timely fashion to permit the member to enter an intelligent and informed objection to the use of his service fees if he desires." Id.
 
 
 31
 .............................................................
 
 
 32
 ...................
 
 
 33
 * * *
 
 
 34
 First, reference to the financial disclosure documents was necessary not only because the rebate procedure incorporates these documents, but also because these documents contain the methodology used to calculate the agency fee. More importantly, Hudson admonishes that a constitutional plan must contain adequate disclosure which "would include the major categories of expenses, as well as verification by an independent auditor." 475 U.S. at 307 n. 18; see also Damiano, 830 F.2d at 1370 ("the union must provide this information to each employee ... to permit the employee to evaluate the calculation of the fees in order to make a reasonable appraisal of the fees preliminary to exercising the option to enter an objection to the union's decision"). These requirements are neither precatory nor self-enforcing.
 
 
 35
 .............................................................
 
 
 36
 ...................
 
 
 37
 * * *
 
 
 38
 Ensuring adequate disclosure to enable a non-member to object, however, is materially different from determining whether particular expenditures are chargeable or whether the calculations and methodology therefore are acceptable. The latter questions, to be sure, are not presented at this stage of the review. As the officers acknowledge, these issues are for the arbitrator in the first instance once a non-member has objected to the propriety of the particular agency fee.
 
 
 39
 I am not sure that the auditors in this case, as in Tierney, fully indicated exactly what they did actually to verify the expenditures in question, nor precisely "what procedures were followed' to verify that purported expenses in a broad general category were truly used in a proper chargeable context. (Tierney III at ___). For example, if the union claimed in its statements that travel expenses to a particular official to attend "a convention" were appropriately charged to plaintiffs, did the auditor verify whether the convention or related activities was political, ideological, or whether involved in collective bargaining, contract administration, or grievance adjustment process.
 
 
 40
 There is pending before the Supreme Court another challenge to changeability determinations following grant of certiorari in a case decided by this court, Lehnert v. Ferris Faculty Association, 881 F.2d 1388 (6th Cir.1989). It may be that the Supreme Court may shed further light on the issues which concern us here in respect to union expenses, if any, attendant to "public relations," conventions, lobbying, and providing services to other bargaining units. See also Lehnert v. Ferris Faculty, 893 F.2d 111 (6th Cir.1989).
 
 
 41
 I state my continuing concern about the implications of Gwirtz v. Ohio Educational Association, 887 F.2d 678 (6th Cir.1989) which seems inconsistent, not only with Tierney and other decisions in this circuit on what constitutes adequate and appropriate independent auditor verification, but also seems inconsistent with the Supreme Court requirements set out in Chicago Teachers Union Local # 1 v. Hudson, 475 U.S. 292 (1986). See Mitchell v. Los Angeles University School District, 1990 W.L. 7728 (C.D.Calif. May 31, 1990). Tierney III correctly sets out that a parent or international union must disclose to the local union how it spends local funds before objections are made and arbitration is made available "Now members are constitutionally entitled to disclosure of these payments prior to objecting, so that they can evaluate the basis for an objection and consequently protect their First Amendment rights." Tierney III at ___. Tierney III also mandates that an exhaustion clause "unduly implies a limitation upon the officers' constitutional rights ... the clause must be deleted." (Tierney III at ___).
 
 
 42
 I concur in the result reached here with these reservations.