Richard W. REESE, et al., Plaintiffs,

v.

**CITY OF COLUMBUS,**
**et al., Defendants.**

**No. C2–92–268.**

United States District Court,
S.D. Ohio, E.D.

May 7, 1992.

---

**2.** This result renders evaluation of defendant's          statute of frauds defense unnecessary.

W. James Young, Glenn M. Taubman, National Right to Work Legal Defense Foundation, Inc., Springfield, Va., and Fred J. Milligan, Jr., Westerville, Ohio, for plaintiffs.

Ronald J. O'Brien and Doug Browell, City Attorney's Office, Rochelle Gardner, Associate General Counsel, Columbus, Ohio, Kimberlee Keller, Associate General Counsel, American Federation of State, County, and Municipal Employees, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

GRAHAM, District Judge.

Plaintiffs are nonunion employees of the City of Columbus, Ohio. Defendants are the City of Columbus, the Mayor of Columbus, sued in his official capacity, and Locals 1632 and 2191 of Ohio Council 8, American Federation of State, County and Municipal Employees (AFSCME). The City has recognized Locals 1632 and 2191 as the sole and exclusive representatives of plaintiffs and other city employees for the purposes of collective bargaining and has entered into collective bargaining agreements with the locals which require all employees who are not members of the union to pay a "fair share fee" to the locals as a condition of their employment. Under this agreement, the City automatically deducts the fair share fee from the paychecks of the nonmember employees and forwards the fees to the local unions. Plaintiffs allege that the payroll deduction procedures adopted by the defendants violate their rights under the First, Fifth and Fourteenth Amendments to the United States Constitution.

This matter is before the Court on the plaintiffs' motion for a preliminary injunction. Arguments on the motion were heard by the Court on April 14, 1992. At that hearing, the parties agreed that the record would consist of the verified complaint and exhibits and the affidavit of William T. Ensley attached to defendants' brief in opposition to the motion for a preliminary injunction. Although the complaint challenges all agency fees collected from nonmembers since April 1990, the motion for preliminary injunction requires the Court to focus its attention specifically on the fair share fee procedure which became effective on November 7, 1991 and which controls current agency fee collections.

The criteria which a district court must balance in determining whether to issue a preliminary injunction are as follows:

1) Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiffs have shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

*NAACP v. City of Mansfield,* 866 F.2d 162, 166 (6th Cir.1989). The Court will first consider whether plaintiffs' claims meet the first requirement for injunctive relief.

Plaintiffs challenge the procedure for deducting union dues from their paychecks. It is constitutionally permissible for a public employer to designate a union as the exclusive collective bargaining representative of its employees, and to require nonunion employees, as a condition of employment, to pay a fair share of the union's cost of negotiating and administering a collective bargaining agreement. *Chicago Teachers Union, Local No. 1 v. Hudson,* 475 U.S. 292, 301, 106 S.Ct. 1066, 1073, 89 L.Ed.2d 232 (1986). However, "nonunion employees do have a constitutional right to 'prevent the Union's spending a part of their required service fees to contribute to political candidates and to express political views unrelated to its duties as exclusive bargaining representative.'" *Id.* at 301–302, 106 S.Ct. at 1073, *quoting Abood v. Detroit Board of Education,* 431 U.S. 209, 234, 97 S.Ct. 1782, 1799, 52 L.Ed.2d 261 (1977). Compulsory subsidization of ideological activity by employees who object thereto must be prevented while preserving the union's ability to require every employee to contribute to the cost of collective bargaining activities. *Id.* 475 U.S. at 302, 106 S.Ct. at 1073–74. Procedural safeguards are necessary to achieve these objectives. In order to balance these competing interests, procedures must be carefully tailored to minimize the infringement on nonmembers' First Amendment rights. *Id.* at 303, 106 S.Ct. at 1074.

■ A nonunion employee must have a fair opportunity to identify the impact of governmental action on his interests and assert a First Amendment claim. Thus, the employee must be given sufficient information to determine the propriety of the fee. *Hudson,* 475 U.S. at 307, 106 S.Ct. at 1076. The constitutional requirements for the collection of agency fees include both an adequate explanation of the basis for the fee and a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker. *Id.* at 310, 106 S.Ct. at 1077–78. While a union is not required to provide nonmembers with an exhaustive and detailed list of all of its expenditures, its duty of adequate disclosure does require disclosure of the major categories of expenses, as well as verification by an independent auditor. *Id.* at 307, n. 18, 106 S.Ct. at 1076, n. 18.

The Sixth Circuit in *Tierney v. Toledo,* 824 F.2d 1497, 1504 (6th Cir.1987) ("*Tierney II*) held that *Abood* and *Hudson* require the following notice:

Specifically, all non-members must receive an adequate accounting, certified by an independent auditor and setting forth the major categories of the union's budgeted expenses, that enables a non-consenting employee to intelligently appraise what proportion of his dues would be allocable to the costs of negotiating and administering the collective bargaining agreement and that portion which would advance the union's ideological purposes. The independent auditor must verify each major category in the union's budget or expenses for each major category of expenses and indicate which categories comprise each component.

■ Plaintiffs claim that defendants' fair share fee procedure notice of November 7, 1991 is constitutionally deficient because it fails to provide audited financial information regarding the chargeable and nonchargeable expenses of Locals 1632 and 2191. The notice contains financial information regarding ASFCME International and ASFCME Ohio Council 8 but contains

no financial information regarding either of the locals. With respect to the locals, the notice states:

> ASFCME Ohio Council 8 has over two hundred and forty (240) affiliated Local Unions. In addition, there are seventy-four (74) Chapters in various amalgamated Local Unions. In accordance with decisions of the federal courts on the question of how local union expenditures should be allocated for the purpose of determining a fair share fee, the Union has determined that the percentage of chargeable activities of these Local Unions is at least as great as the percentage of chargeable activities of Ohio Council 8. As set forth above, the percentage of Ohio Council 8's expenses that are chargeable to fair share fee payors is 90.869%. This same percentage is used for the said Local Unions to establish the total adjustment in fair share fee.

Defendants' method of calculating the fair share fee paid to the locals on the basis of the ratio of chargeable to nonchargeable expenses of the Ohio Council is referred to as the "local union presumption." The presumption underlying this methodology is that local unions spend a larger percentage of their budgets on chargeable expenses than do state or national unions. The Sixth Circuit has rejected a union's attempt to use such a presumption to avoid providing detailed audited financial statements of local and district affiliates. *Lowary v. Lexington Local Board of Education*, 903 F.2d 422 (6th Cir.1990) ("*Lowary II*").

Defendants attempt to distinguish *Lowary II* on the grounds that in *Lowary II*, the union required the arbitrator to adopt the local union presumption as fact in the event of a challenge to the expense allocation. The Sixth Circuit did not so limit its decision, and agreed with the plaintiffs, 903 F.2d at 431, that this local union presumption permits the unions to avoid providing audited and detailed financial statements to nonmembers concerning the local and district union affiliates in violation of *Hudson.*

Defendants further argue that the local union presumption is properly used here because the filing of a challenge rebuts the presumption and the union then bears the burden of proving the percentage of chargeable expenses at the arbitration hearing. This argument was likewise rejected in *Lowary II*, where the court held, 903 F.2d at 432:

> The union must provide detailed information so that the dissenting teachers can understand why they are being charged. Only then can they make an informed decision.

Thus, *Lowary II* held that the local union presumption violated the union's duty to make a full and adequate disclosure in the initial notice. The Sixth Circuit referred to this burden as a "minimal requirement" in exchange for the interference with the nonmembers' First Amendment right of freedom of association. 903 F.2d at 432. The Sixth Circuit's holding in *Tierney II*, is also germane here. In *Tierney II* the court held that the union must give adequate information before it collects any fee and that it is unconstitutional to require nonmembers to object before receiving adequate information.

The fees deducted from plaintiffs' paychecks are sent to Locals 1632 and 2191, not to Ohio Council 8 or ASFCME International. Plaintiffs have shown a substantial likelihood of prevailing on their claim that they are entitled to an accounting of the chargeable and nonchargeable expenses of the local unions which receive the fees deducted from their pay.

Plaintiffs next argue that defendants have violated their duty to provide adequate financial disclosure by failing to provide audited financial statements of all of their affiliates which receive a portion of the fee. Plaintiffs complain in particular of defendants' failure to provide financial information regarding the AFL–CIO. The notice documents identify the locals as affiliates of the AFL–CIO, and Expense Item 19, which is subject to allocation, includes "supporting and paying affiliation fees to other labor organizations which do not negotiate the collective bargaining agreements governing the fair share fee payors' employment."

Nonmembers are entitled to "an audited, detailed accounting of local union payments to affiliated state and national labor organizations that will be used for agreement and nonagreement related purposes." *Tierney II*, 824 F.2d at 1503. Defendants argue, without benefit of authority, that this level of information is not required at the notice phase of the procedure. The Sixth Circuit has said, however, that the mandate to provide such information is clear. *Tierney v. Toledo*, 917 F.2d 927, 937 (6th Cir.1990) (*"Tierney III"*). Plaintiffs have demonstrated a likelihood of success on the merits on this point.

■ Plaintiffs next contend that defendants have violated their duty of full and adequate financial disclosure by failing to provide an audited statement of the allocation of chargeable and nonchargeable expenses of Ohio Council 8. With respect to AFSCME International, the independent auditor's report describes in detail the methodology used to make the allocation between chargeable and nonchargeable expenses under the heading "Note 3—Significant Factors and Assumptions Relating to the Allocation of Expenses." For example, subparagraph (a) of Note 3 states:

> Allocations of chargeable and nonchargeable expenses of the program departments are made on the basis of a review of the activities and expenses of the individual departments.

The independent auditor's report with respect to AFSCME International specifically states that the audit included not only the expenses, but also the allocation between chargeable and nonchargeable expenses. In the case of AFSCME Ohio Council 8, the financial disclosure is markedly different. With regard to Ohio Council 8, the independent auditor's report states:

> We have audited the accompanying balance sheets of AFSCME Ohio Council 8, as of December 31, 1990 and 1989 and the related statements of revenues, expenses, and changes in members' equity, and cash flows for the years then ended. These financial statements are the responsibility of the Council's management. Our responsibility is to express an opinion on these financial statements based on our audits.

While the auditor's report refers to balance sheets and related statements, the financial statement of Ohio Council 8 contained in the notice does not constitute a balance sheet and related statements, but instead is a document entitled "AFSCME Ohio Council 8 Calculation of Chargeable Expense Based on Expense During the Year Ended December 31, 1990 Applicable to Fair Share Fees for the Period January—December, 1992." This does not appear to be the financial statement verified by the auditor. Perhaps the expense information was extracted from the balance sheets referred to in the auditor's report but there is no verification of this. This is evidence that the statement of chargeable and nonchargeable expenses of AFSCME Ohio Council 8 is not independently verified.

Furthermore, the notice contains no information whatsoever as to the method used to allocate chargeable and nonchargeable expenses. There is no explanation of the procedures used to determine just how much of Expense Items 17 through 29 were chargeable and nonchargeable. These items fall into a gray area between chargeable and nonchargeable and have apparently been subjected to some form of proration. While the notice refers to the legal standard enunciated in *Lehnert v. Ferris Faculty Association*, —— U.S. ——, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991) (see *infra*) it does not explain how that standard was applied, nor does it identify the person(s) who made the determination. Finally, there is no indication that the results of any of the allocation determinations were audited by the independent auditor.

While the Sixth Circuit has held that the issue of chargeability versus nonchargeability is a legal determination as opposed to an auditing function, this does not relieve the union from the duty to provide an adequate disclosure of the methodology used to make the allocation and an auditor's statement showing that the methodology chosen was in fact applied and applied correctly. *See Gwirtz v. Ohio Edu-*

*cation Association,* 887 F.2d 678, 682, n. 3 (6th Cir.1989); *Tierney III,* 917 F.2d at 936, n. 7. The Court finds that plaintiffs have shown a likelihood of success in establishing that the financial information concerning AFSCME Ohio Council 8 falls short of the requirements of *Hudson* and its progeny.

■ Plaintiffs claim that the definitions of chargeable activities used in the notice are vague and constitutionally overbroad. The fair share fee payer notice of November 7, 1991 sets forth three categories of expenses, namely, expenses associated with activities which are (1) totally chargeable (Items 1–16); (2) partially chargeable to the extent that they comport with the three part standard of *Lehnert* (Items 17–29) and (3) totally not chargeable (Items 30–35). Plaintiffs rely in part on the Sixth Circuit's decision in *Tierney II,* 824 F.2d at 1497, where the court held that a union "may collect *only for those expenses affirmatively related to the bargaining agreement."* (Emphasis in the original).

In light of the Supreme Court's subsequent decision in *Lehnert,* it appears that the rule should be stated somewhat more liberally in favor of the union. In *Lehnert,* —— U.S. at ——, 111 S.Ct. at 1959, the court distilled the following criteria from previous cases:

> *Hanson and Street* and their progeny teach that chargeable activities must (1) be "germane" to collective-bargaining activity; (2) be justified by the government's vital policy interest in labor peace and avoiding "free riders"; and (3) not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop.

The Supreme Court further said that "germane to collective bargaining" does not mean that there must be a direct relationship between the expense at issue and some tangible benefit to the dissenter's bargaining unit. *Id.* at ——, 111 S.Ct. at 1960–61. The Court concluded, *Id.,* that a local bargaining representative may charge objecting employees for their pro rata share of the costs associated with otherwise chargeable activities of its state and national affiliates, even if those activities were not performed for the direct benefit of the objecting employees' bargaining unit. However, the Court went on to state that there must be some indication that the payment is for services that may ultimately inure to the benefit of the members of the local union by virtue of their membership in the parent organization. *Id.* at ——, 111 S.Ct. at 1960–61.

Plaintiffs claim that the list of totally chargeable and partially chargeable activities include activities which are totally nonchargeable. They first challenge Item 5:

> The public advertising of AFSCME's positions on the negotiation, ratification, or implementation of collective bargaining agreements.

In *Lehnert,* the Court disapproved the expense of lobbying activities not related to ratification or fiscal approval of collective bargaining agreements. The activity in question related to the activities of a "Preserve Public Education" program. Likewise the Court disapproved public relations expenditures designed to enhance the reputation of the teaching profession. The Court found that neither of these activities were sufficiently related to the bargaining function of the union. Here, however, the advertising expense appears to be related directly to the union's collective bargaining activities. Advertising of the union's positions on negotiation, ratification or implementation of collective bargaining agreements is germane to the success of the union's efforts in those areas and such expenses may ultimately inure to the benefit of the members of the local. These expenses are not unlike the strike preparation expenses approved in *Lehnert.* Plaintiffs have not shown a strong or substantial likelihood of demonstrating that these expenses are nonchargeable.

■ Plaintiffs object to chargeable expense Item 10:

> Defending AFSCME against efforts by other unions or organizing committees to gain representation rights in units represented by the unions.

Defendants justify the chargeability of this expense by relying on *Ellis v. Brotherhood*

*of Railway, Airline & Steamship Clerks,* 466 U.S. 435, 453, 104 S.Ct. 1883, 1895, 80 L.Ed.2d 428 (1984) in which the Supreme Court approved expenses of litigation "incident to negotiating and administering the contract or to settling grievances and disputes arising in the bargaining unit" and of "fair representation litigation arising within the unit, of jurisdictional disputes with other unions, and of any other litigation before agencies or in the courts that concerns bargaining unit employees and is normally conducted by the exclusive representative."

Defendants argue that if litigation expense in connection with jurisdictional disputes is chargeable, then other expenses incurred in defending against efforts by other unions or organizing committees to gain representation rights in units represented by the unions are likewise chargeable. However, there is a difference between litigation related to jurisdictional disputes and defensive organizing. The former would presumably arise in relation to enforcement of the collective bargaining agreement, and thus would be germane to collective bargaining activity. Defensive organizing would serve only the union's self-interest in perpetuating itself as the sole representative of the bargaining unit, a goal which is not germane to collective bargaining activity and which may add to the burden on an objector's First Amendment rights since the objector may favor some other union or no union. Such expenses are similar to the organizing expenses which were disallowed in *Ellis.* See *Albro v. Indianapolis Education Assn.,* 585 N.E.2d 666 (Ind.App.1992). Plaintiffs have shown a substantial probability of prevailing on the merits of this claim.

■ Plaintiffs challenge chargeable expense Item 16:

The prosecution or defense of arbitration, litigation or charges to obtain ratification, interpretation, implementation or enforcement of collective bargaining agreements and any other litigation before agencies or in the courts which concerns bargaining unit employees which is

normally conducted by an exclusive representative.

Plaintiffs argue that this definition includes litigation outside of and on behalf of bargaining units other than the City of Columbus bargaining unit, which the Supreme Court in *Lehnert* found to be completely nonchargeable. Plaintiffs are correct in noting that in *Lehnert,* the Supreme Court disapproved litigation expenses not related to the bargaining unit, however, here the expense category, by reason of the wording "litigation before agencies or in the courts which concerns bargaining unit employees," appears to be limited to the bargaining unit. Plaintiffs have not shown a substantial likelihood of establishing that this category includes any nonchargeable expenses.

■ Finally, plaintiffs challenge expenses Items 22 and 23 which are listed as chargeable to the extent that they meet the three-part test of *Lehnert.* These expenses are defined as follows:

22. Organizing within the bargaining unit in which fair share fee or agency shop payers are employed.

23. Organizing other bargaining units.

While these expense items are prefaced with the statement that they are chargeable only to the extent that they satisfy the three-part test of *Lehnert,* the Supreme Court expressly disapproved the chargeability of organizational expenses in *Ellis,* indicating that such expenses can never pass muster under the *Lehnert* test. Plaintiffs have shown a substantial likelihood of success on the merits on this claim.

■ Plaintiffs claim that defendants' procedure for challenging its agency fee contains language which unduly restricts an objector's right of access to the federal courts. On page 4 of the notice, following the list of expense items and the statement of the fair share fee percentage, the following statement appears:

If you wish to challenge the adjustment calculations, you must comply with the challenge procedure set forth below.

The opening paragraph of the challenge procedure reads as follows:

A procedure has been established for challenging the amount of the fair share fee adjustment, i.e. the foregoing calculations ... *You must comply with these procedures in order to challenge the fair share fee adjustment.* (Emphasis supplied).

*Hudson* and its progeny require that an agency fee collection plan must "provide for a reasonably prompt decision by an impartial decisionmaker" when nonmembers object to the amount of the agency fee. *Hudson*, 475 U.S. at 307, 106 S.Ct. at 1076. A procedure which provides for reasonably prompt arbitration of agency fee disputes by an impartial arbitrator complies with this requirement. However, it is well settled that no administrative remedies need be exhausted before bringing an action under 42 U.S.C. § 1983. *Patsy v. Board of Regents of Florida*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988).

Citing *Tierney III*, plaintiffs contend that the language of the challenge procedure unduly implies a limitation on the nonmembers' constitutional rights. However, the language involved here differs from that before the court in *Tierney III*. There, the arbitration procedure contained the requirement that any objecting nonmember "must exhaust the remedies provided by this procedure prior to seeking judicial review of any issues capable of resolution under this procedure." *Tierney III*, 917 F.2d at 933. The Sixth Circuit held that this language unduly implied a limitation on the nonmembers' constitutional rights. Here, there is no language requiring exhaustion of remedies. Furthermore, the requirement that an objector comply with the arbitration procedures is limited to challenges to the "adjustment calculations" and the "fair share fee adjustment" which can fairly be read to apply to issues concerning chargeability versus nonchargeability of particular union expenditures which are generally for the impartial decisionmaker in the first instance and not the federal courts. *See Tierney III*, 917 F.2d at 940. Plaintiffs have failed to show a substantial likelihood of establishing that

the notice of arbitration procedure unduly implies a limitation on a nonmembers' constitutional rights.

■ Citing *NAACP v. Button*, 371 U.S. 415, 440–45, 83 S.Ct. 328, 341–44, 9 L.Ed.2d 405 (1963), plaintiffs claim that the requirement that each objecting employee file a separate charge unduly restricts the First Amendment right of nonunion employees to associate for the purposes of litigation. Plaintiffs argue that objecting employees have a constitutional right to challenge the union's fee calculation as a group. Paragraph A of the challenge procedure provides as follows:

The Challenge: Each fair share fee payor must file a separate challenge. The challenge must be filed in writing. The written challenge must include the following: 1. Fair share fee payor's name, address and telephone number. 2. Social security number. 3. Name of employer. 4. Employing agency. 5. Work location. 6. Job Title. 7. Local union representing the unit. The written challenge must be received by Ohio Council 8 between November 12 and December 11, 1991.

Paragraph B of the challenge procedure includes the following provision: "All challenges filed within the prescribed time period will be consolidated into a single proceeding."

While the procedure does require each objector to file a separate challenge, there is no separate fee required. All that is required is that each individual objector state his or her name and certain identifying information. All challenges filed within the prescribed time are to be consolidated into a single proceeding. The Court concludes that plaintiffs have not established a substantial likelihood of showing that these procedures unduly restrict the right of objectors to associate for the purposes of challenging the agency fee adjustment.

■ Plaintiffs have established a substantial likelihood of proving that defendants' agency fee collection procedures are constitutionally deficient in several respects. Plaintiffs have shown a strong or

472

substantial likelihood or probability of success on the merits on many, albeit not all, of their claims. Since plaintiffs have demonstrated a substantial likelihood of showing that defendants' fee collection procedures are constitutionally deficient, they have shown a likelihood of irreparable injury due to the resulting infringement of their core First Amendment rights. Defendants can demonstrate no injury of comparable importance which would result from the issuance of an injunction. Defendants have no right to collect fees from nonmembers using an invalid collection procedure. *See Weaver v. University of Cincinnati,* 942 F.2d 1039 (6th Cir.1991); *Lowary v. Lexington Local Board of Education,* 854 F.2d 131 (6th Cir.1988); *Tierney II,* 824 F.2d at 1504. The issuance of a preliminary injunction would not cause substantial harm to any third party. Since the granting of a preliminary injunction is necessary to prevent further infringement of the plaintiffs' core First Amendment rights, the granting of such an injunction would be in the public interest. Balancing all of the factors relevant to the issuance of a preliminary injunction, the court concludes that plaintiffs' motion for a preliminary injunction is well taken.

■ Plaintiffs bring this action as a class action on behalf of themselves and others similarly situated and seek to represent a class that consists of all employees of the City of Columbus within the relevant bargaining units who are nonmembers of the locals or were nonmembers at any time when the agency fees were seized from them. While the Court has not yet determined that this action should proceed as a class action, it appears very likely that plaintiffs' request for class action certification will be granted. Therefore, plaintiffs' request for classwide preliminary injunctive relief is granted.

Defendants are preliminarily restrained until further order of this Court from taking payroll deductions from or in any other way collecting agency fees from nonmembers of Local 1632 and Local 2191, Ohio Council 8, American Federation of State, County, and Municipal Employees. Plaintiffs shall post a bond in the amount of $1,000.

It is so ORDERED.