**Richard W. REESE, et al., Plaintiffs,**

v.

**CITY OF COLUMBUS, et al., Defendants.**

No. C2–92–268.

United States District Court, S.D. Ohio, E.D.

June 23, 1993.

W. James Young, Springfield, VA, and Frederick Milligan, Columbus, OH, for plaintiffs.

Ronald O'Brien, City Attys. Office, Columbus, OH, for City of Columbus.

Rochelle Gardner, Columbus, OH, for AFSCME.

## OPINION AND ORDER

GRAHAM, District Judge.

This matter is before the Court on the plaintiffs' motion for summary judgment. Plaintiffs are employees of the City of Columbus, Ohio. Defendants are the City of Columbus, its Mayor, sued in his official capacity, and Local 1632 of Ohio Council 8, American Federation of State, County and Municipal Employees (AFSCME). Plaintiffs are members of a bargaining unit represented by Local 1632 but they are not members of the union. The City has recognized Local 1632 as the sole and exclusive representative of the bargaining unit and has entered into a collective bargaining agreement which requires all employees who are not members of the union to pay a "fair share fee" to the local as a condition of their employment. Under the agreement, the City automatically deducts this fee from the paychecks of the nonmember employees. Plaintiffs allege that defendants' payroll deduction procedures vio-

late their rights under the First, Fifth and Fourteenth Amendments to the United States Constitution. The Court has previously reviewed the facts and many of the legal principles involved in this case in its Memorandum Opinion and Order of May 7, 1992 in which it granted plaintiffs' motion for a preliminary injunction restraining the defendants from collecting fees from nonmembers of Local 1632. *See Reese v. City of Columbus,* 798 F.Supp. 463 (S.D.Ohio 1992) (hereinafter *"Reese"*). In the interest of brevity, the Court will refer the reader to that memorandum opinion and order.

 Plaintiffs contend that they are entitled to judgment as a matter of law with respect to alleged constitutional deficiencies in defendants' fee collection procedures. It is constitutionally permissible for a public employer to designate a union as the exclusive collective bargaining representative of its employees and to require nonunion employees to pay a fair share of the union's cost of negotiating and administering a collective bargaining agreement. *Reese,* 798 F.Supp. at 466. However, nonunion employees have a constitutional right to prevent the union from spending a part of their required fees to support political candidates or to express political views unrelated to the union's duties as exclusive bargaining representative. *Id.* The constitutional requirements for the collection of agency fees include both an adequate explanation of the basis for the fee and a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker. *Id.* The union's duty of adequate disclosure requires it to disclose the major categories of its expenditures and to provide verification by an independent auditor. *Id.*

Defendants began collecting fees from the plaintiffs in June, 1990. In June, July and August of 1990, fees were deducted from the plaintiffs' paychecks without providing any financial disclosures or any notice of procedures available for challenging the fees. Written notices containing financial disclosures and procedures for challenging the fees were given to the plaintiffs on August 22,

1990, October 24, 1990 and November 7, 1991.[1] Plaintiffs claim that each of these notices was constitutionally deficient in certain respects.

LOCAL UNION PRESUMPTION

 None of the notices provided any disclosure of Local 1632's chargeable and nonchargeable expenses. In calculating the fair share fee the Union relied on a "local union presumption." *See Reese,* 798 F.Supp. at 467. Such a presumption may not be used to avoid providing detailed audited financial statements of a local union. *Lowary v. Lexington Local Bd. of Educ. (Lowary II),* 903 F.2d 422 (6th Cir.), *cert. denied,* 498 U.S. 958, 111 S.Ct. 385, 112 L.Ed.2d 396 (1990). Defendants claim that they have provided a factual predicate for the local union presumption which distinguishes this case from *Lowary II.* The evidence defendants have provided to support the local union presumption consists of affidavits indicating that most of the nonchargeable union functions are performed by Ohio Council 8 instead of the locals and an affidavit by the union's counsel which states that in prior arbitration proceedings, including one involving Local 1632, the evidence established that the local union had fewer nonchargeable expenses than Ohio Council 8. However, the audited financial information contained in the fair share fee notice of September 28, 1992 contradicts the local union presumption. It indicates that the nonchargeable expenses of Local 1632 were greater than those of Ohio Council 8. Although in *Lowary II* the court commented on the lack of a factual predicate for the presumption, its holding that the local union presumption is unconstitutional did not rest on that circumstance. In *Lowary II,* the Sixth Circuit said:

We agree with the reasoning of the court in *Lehnert v. Ferris Faculty Association—MEA—NEA,* 707 F.Supp. 1473 (W.D.Mich.1988), *aff'd,* 881 F.2d 1388 (6th Cir.1989), that such a local union presumption is unconstitutional under *[Chicago Teachers Union, Local No. 1 v.] Hudson* [475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) ] and *Tierney [v. City of Toledo,*

---

1. The notice sent on August 22, 1990 is dated December 1, 1989. After this lawsuit was filed, defendants sent another notice dated September 28, 1992.

824 F.2d 1497 (6th Cir.1987) ]. Specifically, the court rejected the argument that the local union presumption is constitutional merely because it is rebuttable upon an objection to the impartial decisionmaker. Holding the presumption to be unconstitutional, the court noted that *"the use of the local presumption increases the risk that the reduced fee collection from the objector would be in excess of what is appropriate."* 903 F.2d at 431 (emphasis added). Thus, in *Lowary II*, the Sixth Circuit specifically adopted the reasoning of the district judge in *Lehnert* who held the local union presumption unconstitutional because: 1. it increases the risk that the fee "would be in excess of what is appropriate" and 2. it "falls short of the precision required under *Hudson, Tierney* and *Damiano* [*v. Matish*, 830 F.2d 1363 (6th Cir.1987) ]." 707 F.Supp. at 1480.

Defendants' efforts to distinguish *Lowary II* are unavailing; it unqualifiedly holds that the use of a local union presumption is unconstitutional. Furthermore, the manner in which the defendants used the local union presumption in the present case deprived nonmembers of sufficient information to determine the propriety of the fee. *See Hohe v. Casey*, 956 F.2d 399, 410–11 (3d Cir.1992).

■ Defendants argue that it would be unduly burdensome to perform an audit on each local union and prepare a fair share notice to the nonmembers of each local. However, each local has its own treasurer and maintains its own financial records. Other than conclusory statements, the defendants have provided the Court with no facts which would support their claim that a separate audited statement of the chargeable and nonchargeable expenses of Local 1632 would be unduly burdensome. A separate audited statement for Local 1632 was included in the fair share fee notice of September 28, 1992. Defendants have not provided the Court with any information about the cost of producing that statement. The Court notes that there are approximately 2,000 employees in the bargaining unit represented by Local 1632 and that the dues collected from these employees is approximately $20.00 per month. This would yield an annual income of almost half a million dollars. The Court finds no factual basis for defendants' claim that a separate audited financial statement of Local 1632 would be unduly burdensome. In any event such a statement is constitutionally required regardless of the burden it may impose on the union. *See Lowary II*, 903 F.2d at 431–32. Plaintiffs are entitled to summary judgment on this issue.

## FAILURE TO PROVIDE FINANCIAL DISCLOSURES REGARDING AFFILIATED STATE AND NATIONAL UNIONS

■ Local 1632 pays affiliation fees to other labor organizations, including the AFL–CIO. The fair share fee notices failed to provide any financial disclosure regarding these affiliated labor organizations. The mandate to provide such information is clear. *Reese*, 798 F.Supp. at 467–68. Plaintiffs are entitled to summary judgment on this issue.

## FAILURE TO PROVIDE INFORMATION REGARDING THE PROPORTION OR AMOUNTS OF PAYMENTS MADE TO EACH AFFILIATE

■ Defendants' fair share fee notices do not inform nonmembers of the dollar amount of the payments made to affiliated unions or the percentage of the total agency fee paid to them. A nonmember is entitled to a financial disclosure of the chargeable and nonchargeable expenses of an affiliated union. Such information is relatively useless in the absence of any information about the amount of the fee which is being remitted to an affiliate. The Court addressed this matter in its Opinion and Order of February 13, 1993 and concluded that such a disclosure was constitutionally required. *See* February 19, 1993 Op. and O., pp. 9–10. In *Hohe v. Casey*, 956 F.2d 399, 410 (3rd Cir.1992), the court criticized defendant's fair share fee notice for failing "to inform nonmembers of the amount their locals contributed to Council 13 and the International, . . . ." And in *Weaver v. University of Cincinnati*, 942 F.2d 1039, 1046 (6th Cir.1991), the court held that *Hudson* required the local union "to delineate what portion of the agency fee goes to the Union's affiliates." Plaintiffs are entitled to summary judgment on this issue.

*DEFINITIONS AND METHODS OF CAL-
CULATIONS USED FOR CHARGEABLE
ACTIVITIES*

■ Plaintiffs assert that the definitions and methods used by the union defendants to determine chargeable activities are vague and constitutionally overbroad and result in charging nonmembers for constitutionally nonchargeable items. With one exception, discussed below, plaintiffs have not challenged any specific definitions or procedures. It is impossible for the Court to respond to plaintiffs' broadside challenge to unspecified definitions and procedures.

The only specific language of the fair share fee notice which plaintiffs have specifically addressed is the language contained on Page 1 of the November 7, 1991 notice and prior notices which states:

The reduction in the fair share fee, which has already been granted, reflects expenses to support political and ideological activity and unrelated expenses. The remainder of the fair share fee is the proportionate share of costs of collective bargaining, contract administration *and pursuing matters affecting wages, hours and other terms and conditions of employment.*

(Footnote 10, p. 20 of plaintiffs' memorandum of points and authorities in support of their motion for summary judgment) (emphasis added). Plaintiffs argue that the underlined language is constitutionally overbroad. The Court notes, however, that this language appears in what could be described as the preamble to the definition of chargeable and nonchargeable expenses. Thereafter, the various categories of chargeable, partially chargeable and nonchargeable expenses are specifically defined. Since the definitions of expense categories are more specific they, and not the general preamble, would control. Thus, the Court rejects plaintiffs' argument that the language is unconstitutionally overbroad.

*PARTIALLY CHARGEABLE ACTIVITIES*

The Court finds, for the reasons stated in *Reese,* 798 F.Supp. at 468, that with respect to Expense Items 17 through 29, the November 7, 1991 fair share fee notice is constitu-tionally deficient and that plaintiffs are entitled to summary judgment on this issue.

*DEFENSIVE ORGANIZING*

■ Plaintiffs object to the chargeability of Expense Item 10 in defendants' fair share fee notice of November 7, 1991 which is substantially the same as Expense Item 12 in the notices of August 22, 1990 and October 23, 1990:

Defending AFSCME against efforts by other unions or organizing committees to gain representation rights in units represented by the unions.

In *Reese,* 798 F.Supp. at 470, this Court concluded that "[d]efensive organizing would serve only the union's self-interest in perpetuating itself as the sole representative of the bargaining unit, a goal which is not germane to collective bargaining activity and which may add to the burden on an objector's First Amendment rights...." A union may not properly charge a nonmember for such expenses. Plaintiffs are entitled to summary judgment on this issue.

*ORGANIZING EXPENSES*

Plaintiffs challenge Expense Items 22 and 23 in defendants' fair share fee notice of November 7, 1991 which are substantially the same as Expense Items 9 and 10 in the notices of August 22, 1990 and October 23, 1990:

22. Organizing within the bargaining unit in which fair share fee or agency shop payers are employed.

23. Organizing other bargaining units.

■ The Supreme Court expressly disapproved the chargeability of organizational expenses in *Ellis v. Brotherhood of Railway, Airline and Steamship Clerks,* 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984). Defendants have attempted to show that, in the context of public employment, organizing is germane to collective bargaining activity because there is a direct linkage between union organizing activity and union bargaining power. The Court rejects this argument finding the linkage attenuated and that requiring nonmembers to contribute to the cost of union organizing would significantly increase the burden on their First Amendment rights. The Supreme Court's decision in *El-*

*lis* strongly suggests that organizing expenses can never pass constitutional muster. Plaintiffs are entitled to summary judgment on this issue.

## EXPENSE OF LITIGATION OUTSIDE PLAINTIFFS' BARGAINING UNIT

■ Ohio Council 8 provides legal services to all of its affiliated local unions on an as-needed basis. The council employs a staff of lawyers and retains outside counsel when necessary. The record shows that the litigation expenses of Ohio Council 8 are directly related to grievance handling, the enforcement of the collective bargaining agreement and negotiating collective bargaining agreements. *See* February 19, 1993 Op. and O., pp. 4–6. In effect, the locals have pooled their resources at the council level in order to obtain legal services when needed. Plaintiffs claim that it is constitutionally impermissible for defendants to charge plaintiffs for any part of the cost of litigation conducted on behalf of the members of other bargaining units. The Court discussed this issue at length in its February 19, 1993 Op. and O. and for the reasons stated therein, the Court finds that defendants may properly include a pro rata share of Ohio Council 8's chargeable legal expenses as part of its agency fee. *See* February 19, 1993 Op. and O., pp. 6–8. Plaintiffs are not entitled to summary judgment on this issue.

## ADVERTISING EXPENDITURES

■ Plaintiffs challenge the constitutionality of Expense Item 5 in defendants' fair share fee notice of November 7, 1991 which is substantially the same as Expense Item 6 in the notices of August 22, 1990 and October 23, 1990:

> The public advertising of AFSCME's positions on the negotiation, ratification, or implementation of collective bargaining agreements.

As defined, such advertising expenses would be directly related to the union's collective bargaining activities. These expenses are analogous to the strike preparation expenses approved in *Lehnert*. Such expenses are not per se unconstitutional. *Reese*, 798

F.Supp. at 469. Plaintiffs are not entitled to summary judgment on this issue.

■ Plaintiffs object to certain specific advertising expenses deemed chargeable by the defendants, namely advertising expenses related to a protest of the firing of Lori Moon and congratulatory birthday advertisements for both a local union and the Ohio Federation of Teachers. The Court is inclined toward the view that challenges to specific expenditures should be relegated to an arbitrator, a procedure sanctioned in *Lowary II*. *See Lowary*, 903 F.2d at 433. However, since there are only three items presently at issue and the parties have fully briefed the matter, the Court will proceed to rule on them.

■ The advertising expense for Ms. Moon arose out of a controversy concerning her discharge from public employment while a probationary employee and her allegations of sexual harassment by her employer. Ohio Council 8 incurred advertising expenses to publicize Ms. Moon's allegations of sexual harassment in an attempt to apply pressure on the employer to re-hire her. Ms. Moon was not a member of the bargaining unit represented by Local 1632. This expense was not properly chargeable and impinged upon nonmembers' First Amendment rights. The same is true of the cost of the advertisements congratulating Barberton Local 265 and the Ohio Federation of Teachers on their fiftieth anniversaries. These advertisements were public speech generally in support of public employee unionism which dissenting members should not be required to support. Plaintiffs are entitled to a summary judgment declaring these three items of advertising expense to be unconstitutional.

## PROCEDURE FOR CHALLENGING AGENCY FEE

Plaintiffs argue that the union's procedures for challenging agency fees are unconstitutionally burdensome. In support of this argument, plaintiffs adopt by reference the arguments advanced in support of their motion for a preliminary injunction. Plaintiffs also claim that the requirement that nonmembers file separate objections is unconstitutional and that the notice unconstitutionally suggests that resort to internal union reme-

dies is the only method to challenge the amount of the fee. The Court analyzed these issues in *Reese*, 798 F.Supp. at 470–71, and based on that reasoning holds that defendants' procedures for challenging agency fees are constitutional. Plaintiffs are not entitled to summary judgment on this issue.

*FAILURE TO PROVIDE AUDITED FINANCIAL DISCLOSURE OF THE EXPENDITURES OF OHIO COUNCIL 8*

The November 7, 1991 fair share fee notice and its predecessors did not provide the constitutionally required audited financial disclosure regarding the expenses of Ohio Council 8. See *Reese*, 798 F.Supp. at 468. Plaintiffs are entitled to summary judgment on this issue.

*LOBBYING FOR PURPOSES OTHER THAN THE NEGOTIATION, RATIFICATION OR IMPLEMENTATION OF A COLLECTIVE BARGAINING AGREEMENT*

Defendants' fair share fee notice of September 28, 1992 includes an expense item for lobbying for purposes other than the negotiation, ratification or implementation of a collective bargaining agreement. The notice states that such expenses are chargeable to the extent that they satisfy the three-pronged test of *Lehnert*. For the reasons stated in its opinion and order of February 19, 1993, the Court finds that such expenses can never pass constitutional muster under *Lehnert* and that plaintiffs are entitled to summary judgment on this issue.

*REMEDIES*

Plaintiffs are entitled to a declaration that the collection of agency fees from the plaintiff class from June, 1990 to May 7, 1992 did not comport with the constitutional requirements for the collection of agency fees. Ordinarily, for the reasons stated in *Lowary II*, 903 F.2d at 432–33 and *Weaver v. University of Cincinnati*, 970 F.2d 1523, 1533–34 (6th Cir.1992), restitution should be limited to the unchargeable portion of the fees collected. However, the Court concludes that this case may call for an exception to the general rule. In *Weaver*, the court left open the possibility of full restitution where the constitutional violations are willful or malicious. *Id.* at 1534. This issue cannot be resolved on a motion for summary judgment.

Plaintiffs also seek an award of punitive damages against both defendants. Punitive damages are appropriate in a case such as this when the defendants' conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the plaintiffs' federally protected rights. *Beauford v. Sisters of Mercy–Province of Detroit, Inc.*, 816 F.2d 1104, 1108–09 (6th Cir.1987). "The imposition of punitive damages in civil rights actions has generally been limited to cases involving egregious conduct or a showing of willfulness or malice on the part of the defendant." *Id.* at 1109 (*citing Wolfel v. Bates*, 707 F.2d 932, 934 (6th Cir.1983)). Like their claim for full restitution, plaintiffs' claim for punitive damages presents genuine issues of material fact which cannot be resolved on a motion for summary judgment.

The facts of this case do not warrant the imposition of a permanent injunction. The appropriate remedy is damages and the continuation of the present preliminary injunction until such time as defendants provide plaintiffs with a fair share fee notice which passes constitutional muster.

Plaintiffs' motion for summary judgment is granted in part and denied in part.

It is so ORDERED.