71 F.3d 619
 151 L.R.R.M. (BNA) 2001, 64 USLW 2464
 Richard W. REESE; George R. Jordan; Richard D. Kaufman;
Betty Slater; Larry L. Wygle; Marion R. Cramblit; Timothy
Wanner, on behalf of themselves and the class that they
represent, Plaintiffs-Appellants,
v.
CITY OF COLUMBUS; Gregory Lashutka, Mayor; Local 1632;
Ohio Council 8; American Federation of State,
County and Municipal Employees,
Defendants-Appellees.
 Nos. 93-4112, 94-3108.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 1, 1995.
Decided Dec. 19, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied March 7, 1996.
 
 Glenn M. Taubman, W. James Young (argued and briefed), Springfield, VA, for plaintiffs-appellants.
 Ronald J. O'Brien, Douglas K. Browell (briefed), City Attorney's Office for City of Columbus, Columbus, OH, for City of Columbus, Gregory Lashutka.
 Donald J. Mooney, Jr. (argued and briefed), Benesch, Friedlander, Coplan & Aronoff, Cincinnati, OH, Rochelle L. Gardner, AFSCME, Ohio Council 8, Worthington, OH, for Local 1632.
 Mark D. Tucker, Benesch, Friedlander, Coplan & Aronoff, Columbus, OH, Donald J. Mooney, Jr., Cincinnati, OH, for Ohio Council 8, American Federation of State County and Mun. Employees.
 Before: MARTIN, GUY, and DAUGHTREY, Circuit Judges.
 BOYCE F. MARTIN, JR., Circuit Judge.
 
 
 1
 This case requires us again to address the issue of whether unions may collect a fair share fee to pay for so-called "extra-unit"[1] collective bargaining-related litigation, lobbying and advertising expenses from nonunion employees who, pursuant to Ohio law, belong to a collective bargaining unit represented exclusively by the unions. The City of Columbus deducts the fair share fee from the paychecks of nonunion city employees and pays it to the defendant unions. Claiming that their First, Fifth and Fourteenth Amendment rights have been violated by the "seizure" of the fair share fees and by the unions' use of these fees to pay for allegedly non-chargeable activities, the objecting nonunion employees appeal the district court's denial of their motion for summary judgment on the issue of whether extra-unit litigation, lobbying and advertising expenses are chargeable to them. Reese v. City of Columbus, 826 F.Supp. 1115 (S.D.Ohio 1993). They also appeal the district court's decision to dissolve its preliminary injunction restraining the collection of these fees. J.A. at 586 (Order of September 22, 1993).
 
 
 2
 The objecting employees' collective bargaining unit is represented exclusively by Defendants Local 1632, its national affiliate, the American Federation of State, County and Municipal Employees International and its state affiliate, Ohio Council 8. For purposes of deciding the summary judgment motion, the district court determined that Ohio Council 8 provides legal services to all affiliated local unions on an as-needed basis, and employs a staff of lawyers to handle such local union matters as grievance handling, enforcement of collective bargaining agreements, and negotiation of collective bargaining agreements. The district court also concluded that the national union provides services to the state and local unions, including advertising the national union's positions on negotiation, ratification and implementation of collective bargaining agreements. Local 1632 has no professional or permanent staff.
 
 
 3
 Ohio law permits fair share fees to be collected from nonunion city employees for expenses related to the unions' costs of negotiating, ratifying, enforcing and administering the collective bargaining agreement between the unions and the City. Ohio Rev.Code Ann. Sec. 4117.09(C) (Baldwin 1993). Prior to the collection of fees, the unions must give written notice of chargeable and nonchargeable expenses, and other procedural requirements must be met. Approximately 1500 non-union City employees pay the fair share fee.
 
 
 4
 On March 15, 1992, the objecting employees filed suit alleging that the defendants had violated their "First-Amendment due process rights" by failing to provide them with a proper notice regarding the collection of fair share fees. Because of constitutional inadequacies with the required financial disclosure, the district court ordered a preliminary injunction restraining the City from collecting the fees and subsequently certified the class. The unions issued a second notice and recalculated fee, but due to remaining inadequacies the unions' motion to dissolve the preliminary injunction was denied.
 
 
 5
 On January 15, 1993, the objecting employees moved for summary judgment seeking a final declaratory judgment that the fair share fees collected between June 1990 and May 1992 were collected in violation of their constitutional rights because the unions' notices and procedures were constitutionally insufficient. On June 23, the district court granted in part and denied in part the motion. Relevant to this appeal, the district court held that it was constitutionally permissible under Lehnert v. Ferris Faculty Association, 500 U.S. 507, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991), for the unions to assess a fee for collective bargaining agreement-related litigation, lobbying and advertising expenses even though the fee also supported litigation, lobbying and advertising taking place outside of the objectors' own collective bargaining unit. On September 22, the district court granted the unions' renewed motion to dissolve the preliminary injunction, finding that the final amended proposed fair share fee notice complied with all applicable constitutional requirements. Certain issues were reserved for trial. The parties then reached a partial settlement agreeing to preserve three issues for appeal. Pursuant to the agreement, the objecting employees now appeal the chargeability of the "extra-unit" litigation, advertising and lobbying expenses.
 
 
 6
 We review a district court's decision dissolving a preliminary injunction for abuse of discretion, but we review de novo where the dissolution is based upon a legal premise. Tyson Foods, Inc. v. McReynolds, 865 F.2d 99, 100 (6th Cir.1989). On February 19, 1993, the district court denied the unions' motion to dissolve the preliminary injunction because it believed that the objectors would likely succeed[2] on two of the legal issues that had yet to be resolved--the chargeability of extra-unit advertising, and lobbying expenses.[3] On September 22, however, it dissolved the injunction in a summary order, thereby implicitly deciding that the objectors had not shown a substantial likelihood of success regarding the chargeability of the advertising and lobbying expenses. The district court's decision to dissolve the injunction was based on the legal premise that the lobbying and advertising expenses were chargeable.
 
 
 7
 As to the denial of the objectors' motion for summary judgment, we also review for abuse of discretion. Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). The district court, by denying in part the objectors' motion for summary judgment, believed that the objectors were not entitled to judgment as a matter of law, and that genuine issues of material fact remained for trial.
 
 
 8
 The objecting employees rely on the Supreme Court case of Lehnert v. Ferris Faculty Assoc., as their primary authority for asserting that the district court erred in concluding that litigation, lobbying and advertising expenses were chargeable even though the fees benefitted other collective bargaining units. 500 U.S. 507, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991) (plurality opinion). The unions also rely on Lehnert and argue that general legal principles, as well as the views of the majority in Lehnert, require this Court to affirm the district court's determination that the charges for the "extra-unit" expenses are not unconstitutional.
 
 
 9
 Lehnert established a three-part test for determining whether mandatory fair share fees infringe upon a dissenting employee's First Amendment rights. 500 U.S. at 519, 111 S.Ct. at 1959 (J. Blackmun delivering the opinion of the Court as to Part II with Rehnquist, C.J., White, Stevens, and Marshall, JJ. concurring). A mandatory assessment is constitutional if it is (1) "germane to collective bargaining"; (2) "justified by the government's vital policy interest in labor peace and avoiding 'free-riders,' "; and, (3) "does not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop." Id. Justices Scalia, O'Connor, Souter and Kennedy, however, supported a "statutory duties" test, and would permit the unions to compel fees only for the "costs of performing the union's statutory duties as exclusive bargaining agent." 500 U.S. at 550, 111 S.Ct. at 1975. Unfortunately, the 5-4 decision in favor of the three-prong test is one of the clearer aspects of this opinion. We now turn to examine whether the district court correctly applied Lehnert in determining that each of the "extra-unit" expenses were chargeable to the objecting employees.
 
 
 10
 Chargeability of Extra-Unit Litigation Costs. The district court found that the fair share fee included a litigation expense charge paid to Ohio Council 8 to provide on-call legal services related to collective bargaining to all local units, including Local 1632.
 
 
 11
 The record shows that the litigation expenses of Ohio Council 8 are directly related to grievance handling, the enforcement of the collective bargaining agreement and negotiating collective bargaining agreements ... In effect, the locals have pooled their resources at the council level in order to obtain legal services when needed ... the Court finds that defendants may properly include a pro rata share of Ohio Council 8's chargeable legal expenses as part of its [fair share] fee.
 
 
 12
 Reese, 826 F.Supp. at 1120. The district court concluded that summary judgment was not warranted because the unions had shown that the "bulk" of the litigation services provided by Ohio Council 8 were related to grievance handling and enforcement of collective bargaining agreements, and therefore were collective bargaining agreement-related litigation services available to the objecting employees' unit. The district court did not abuse its discretion in determining that a disputed issue of material fact existed on this point.
 
 
 13
 Neither did the district court abuse its discretion in dissolving the injunction restraining the fee assessment for the extra-unit litigation charge. Although originally concluding that this charge was unconstitutional, 798 F.Supp. at 470, the district court later reversed its view. J.A. at 437, 439 (Order of February 19, 1993). We agree with the court's ultimate determination that the objectors did not enjoy a substantial likelihood of success in their challenge of this charge based on its conclusion that a mandatory fair share fee charged for pooled litigation services is constitutional under Lehnert. In deciding the "substantial likelihood of success" prong of the preliminary injunction inquiry, the district court was faced with the difficult task of interpreting Lehnert, which did not have a holding on this precise issue. Justice Marshall correctly observed that the issue of chargeability of extra-unit costs was not properly before the Court: "The opinion's discussion of extra-unit litigation costs is no more than dicta since, as far as appears from the record before us, no such costs are at issue in this case." 500 U.S. at 544, 111 S.Ct. at 1972. Costs related to the reporting on litigation were at issue in Lehnert. However, we believe Lehnert does control the issue of the chargeability of pooled litigation services because a majority approved of charges for pooled expenses like those in this case.
 
 
 14
 Despite the fact that the issue of extra-unit litigation costs was not properly before the Court, four Supreme Court Justices agreed that extra-unit litigation costs were not chargeable if they were "unrelated to an objecting employees' unit." Lehnert, 500 U.S. at 528, 111 S.Ct. at 1964 (J. Blackmun, Rehnquist, White and Stevens concurring in the last paragraph of Part IV.B). A majority in Lehnert, however, approved of charges for pooled expense arrangements. Lehnert, 500 U.S. at 522, 111 S.Ct. at 1961 (J. Blackmun delivering the majority opinion as to Para. III.B.). Regarding the constitutionality of charges for pooled expenses, the majority in Lehnert stated,
 
 
 15
 We ... conclude that a local bargaining representative may charge objecting employees for their pro rata share of the costs associated with otherwise chargeable activities of its state and national affiliates, even if those activities were not performed for the direct benefit of the objecting employees' bargaining unit.... There must be some indication that the payment is for services that may ultimately inure to the benefit of the members of the local union by virtue of their membership in the parent organization.
 
 
 16
 Id. at 524, 111 S.Ct. at 1961. Based on this holding and the district court's determination that the objecting employees in this case benefitted from the pooling arrangement for litigation services, these services were not "unrelated" to the objectors' unit, and therefore are not unconstitutional. We agree with the district court's disposition in dissolving the injunction as to the litigation expenses.
 
 
 17
 Chargeability of Advertising Expenses. The final fair share fee notice in this case contains Expense Item 5, for
 
 
 18
 The public advertising of [the national union's] positions on the negotiation, ratification, or implementation of collective bargaining agreements.
 
 
 19
 J.A. at 590. The district court ultimately denied the objecting employees' request that the unions be restrained from charging for advertising expenses related to collective bargaining because Item 5, by its terms, states that the charge is for expenses incurred by the national union in advertising its positions related to collective bargaining agreements. If this were the sole basis for the district court's decision, we might be inclined to reverse. Item 5 does not, by its terms, provide evidence that the objectors' unit benefits from the national union's collective bargaining-related advertising. However, the district court went on to determine that a genuine issue of material fact existed concerning the benefit to the objectors' unit. Furthermore we agree that collective bargaining-related advertising can be constitutional under Lehnert.
 
 
 20
 Although Lehnert did not concern the constitutionality of charges for advertising expenses, the district court analogized collective bargaining-related advertising expenses to strike preparation expenses[4] and collective bargaining-related lobbying expenses it believed that the Supreme Court approved of in Lehnert. The district court stated that "[a]dvertising of the union's positions on negotiation, ratification or implementation of collective bargaining agreement is germane to the success of the union's efforts in those areas and such expenses may ultimately inure to the benefit of the members of the local." Reese, 798 F.Supp. 463, 467 (S.D.Ohio 1992).
 
 
 21
 Again, the objectors argue that it is unconstitutional for them to have to pay for collective bargaining-related advertising if it benefits other units, even if they are also benefitted. The district court found that the advertising charges here were germane to collective bargaining and that the objectors had not shown that they did not or would not benefit from the expenditure. We do not believe the district court abused its discretion in denying summary judgment to the objecting employees after finding the charges germane to collective bargaining or in dissolving the injunction as to this charge.
 
 
 22
 Chargeability of Lobbying Expenses. While the district court granted summary judgment to the objectors on the issue of the chargeability of lobbying expenses for purposes other than the negotiation, ratification or implementation of a collective bargaining agreement, the court permitted the unions to assess a fee for
 
 
 23
 6. Lobbying for the negotiation, ratification, or implementation of a collective bargaining agreement.
 
 
 24
 J.A. at 590. The objectors argue that Item 6 permits charges for lobbying unrelated to their collective bargaining agreement and therefore it fails the last two prongs of the three-prong Lehnert test. Finally, they argue that a majority of Justices in Lehnert held that all lobbying expenses are nonchargeable.
 
 
 25
 The objectors misunderstand the Lehnert plurality position on this issue. In Lehnert, four Justices (Blackmun, Rehnquist, White and Stevens) agreed that the lobbying charges in that case were not chargeable because they were not related to collective bargaining. The lobbying charges in Lehnert were for lobbying in connection with the "Preserve Public Education" program, a program designed to secure funds for education generally in Michigan. In applying the three part test to the lobbying charge for the "Preserve Education Program," Justices Blackmun, Rehnquist, White and Stevens "held" that a state could constitutionally charge dissenters for lobbying expenses only in "the limited context of contract ratification or implementation" but could not charge dissenters for "legislative lobbying or political union activity" without infringing their First Amendment rights. Id. at 522, 111 S.Ct. at 1960-61. They also believed that the first two prongs of the test were met only if the lobbying related to the dissenters' collective bargaining agreement. Id. at 521, 111 S.Ct. at 1960. As will become evident after reviewing Justice Marshall's view of the chargeability of lobbying expenses, the position of these four Justices is the narrowest ground of agreement and therefore must be applied in this case.[5] See Triplett Grille, Inc. v. Akron, 40 F.3d 129, 132 (6th Cir.1994) ("[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds' ") (citing Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977)).
 
 
 26
 Justice Marshall would have permitted the charges for the challenged "public relations campaign ... a specialized form of lobbying" in Lehnert, despite the lack of a close nexus to the dissenters' collective bargaining agreement, because he believed the public relations campaign to be germane to collective bargaining (serves to influence officials who control the terms of public-sector labor contracts) and because the lobbying placed no additional burden on the First Amendment rights of the dissenters than already imposed upon them by the agency shop laws. 500 U.S. at 543, 111 S.Ct. at 1971. We believe Justices Blackmun, Rehnquist, White and Stevens, and certainly Justice Marshall with his more expansive understanding of collective bargaining-related lobbying, would permit a lobbying expense charge assuming, of course, that the expense satisfied their three-prong test. Based on the record before us, the question remains whether the lobbying expense in Item 6 benefitted the objectors' unit and whether the lobbying expense would satisfy the three-prong test.
 
 
 27
 For reasons not obvious from the record, the district court did not expressly apply the three-prong test to the extra-unit lobbying expense in Item 6. J.A. at 478. Neither did the district court determine whether there was a genuine issue of material fact concerning the benefit, if any, the objectors' unit received from this expenditure in deciding the summary judgment motion. Item 6, by its language, states that the lobbying charge is for collective bargaining agreement-related lobbying and therefore is germane to collective bargaining as required by the first prong of the Lehnert test. The objectors do not assert that the charge in Item 6 was for a purpose other than collective bargaining-related lobbying. Therefore, the first prong of the Lehnert test is met. We must remand, however, for a determination of whether the lobbying expense charge benefitted the objectors' unit and if so, whether the expenditure is justified by the government's vital policy interest in labor peace and avoiding free-riders and whether the charge significantly added to the burdening of free speech that is inherent in the allowance of an agency shop.
 
 
 28
 The judgments of the district court are AFFIRMED as to the litigation and advertising expenses, but the denial of summary judgment to the plaintiffs is REVERSED as to the lobbying expense in Item 6 and REMANDED for further proceedings. The dissolution of the preliminary injunction is also REVERSED only as to the lobbying expense charge and REMANDED for further proceedings.
 
 
 
 [1]
 The unions charged the objecting employees a fee for on-call litigation service and for lobbying and advertising expenses related to collective bargaining. Some of this fee also benefitted other local unions. The objectors call expenses related to the negotiation, ratification or implementation of collective bargaining agreements, but which were not incurred solely in connection with the collective bargaining agreement between their Local 1632 and the City "extra-unit" or "indirect" expenses
 
 
 [2]
 A preliminary injunction may be issued only if a legal remedy would be inadequate. The district court weighs four factors in deciding whether to issue a preliminary injunction: 1) whether plaintiffs have shown a substantial likelihood of success on the merits, 2) whether the plaintiffs have shown irreparable injury; 3) whether the preliminary injunction would cause substantial harm to others; 4) and whether the public interest would be served by the issuance of the preliminary injunction. NAACP v. City of Mansfield, 866 F.2d 162, 166 (6th Cir.1989)
 
 
 [3]
 On February 19, 1993, the district court determined that Lehnert would permit the charge for the extra-unit litigation expenses involved, and therefore the objectors had not shown a substantial likelihood of success on this issue
 
 
 [4]
 Justices Blackmun, Rehnquist, White and Stevens agreed that the strike preparation expenses (the local and state unions set up a strike "crisis" center) were directly related to negotiating a collective bargaining agreement benefitting the dissenters, imposed no additional burden on the dissenters free speech rights, and was not contrary to public policy. 500 U.S. at 530-32, 111 S.Ct. at 1964-66. Justice Kennedy would agree. 500 U.S. at 562-63, 111 S.Ct. at 1981-82. Justice Marshall approved of the strike prep expenses under the three-prong test, 500 U.S. at 550, 111 S.Ct. at 1975. Justices Scalia, O'Connor and Souter would not permit a charge for strike preparation expenses because "[i]n conducting a strike, a union does not act in its capacity as the government-appointed bargaining agent for all employees." 500 U.S. at 562, 111 S.Ct. at 1981
 
 
 [5]
 Justice Scalia, applying his "statutory duties" test, determined that the challenged lobbying expenses in Lehnert were not chargeable because "though [public relations and lobbying activities] may affect the outcome of negotiations, [these] are no part of this collective-bargaining process." 500 U.S. at 559, 111 S.Ct. at 1979-80. Thus, Justice Scalia (and O'Connor and Souter concurring) would presumably permit a charge for a lobbying expense that was related to a union's duties as statutory bargaining agent. Likewise, Justice Kennedy would permit a charge for a lobbying expense if it was "reasonably or necessarily incurred in the performance of the union's statutory duties as the exclusive bargaining representative." 500 U.S. at 564, 111 S.Ct. at 1982. Justices Scalia, O'Connor, Souter and Kennedy would thus permit lobbying expense charges related to collective bargaining if the objecting employees' unit benefitted and if the expense was incurred as part of the unions' statutory duty of representation; however, theirs was not the majority position on this issue